UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

GREAT WEST CASUALTY COMPANY,

CASE NO. 1:25-cv-20642-JB

Interpleader-Plaintiff,

v.

NILDA MERALLA, as Personal Representative of the Estate of Tyler Brian Escudero Ferguson, RODRICK ROLLE, as Personal Representative of the Estate of Sharon Ferguson, LAWRENCIA FERGUSON, individually and as natural parent and guardian of minors S.B. and L.B., MAMO TRANSPORTATION, INC., RYDER TRUCK RENTAL, INC., and TITUS CARTER,

Interpleader-Defendants.
_______________________________________/

**PLAINTIFF, GREAT WEST CASUALTY COMPANY'S, RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE OR ALTERNATIVE MOTION FOR MORE DEFINITE STATEMENT [DE 38]**

Plaintiff, GREAT WEST CASUALTY COMPANY (hereinafter "Great West" or "Plaintiff"), by and through the undersigned counsel, hereby responds in opposition to the "Motion To Strike Requests For Discharge And Injunctive Relief, Or In The Alternative, For A More Definite Statement As To Paragraph 22" filed by Defendant, LAWRENCIA FERGUSON, individually and as natural parent and guardian of minors S.B. and L.B. ("Defendant"). [DE 38].

## INTRODUCTION

This case arises from a motor vehicle accident in which Sharon Ferguson, the at-fault driver, caused fatalities and grave injuries. Great West insures the vehicle that was struck—not the vehicle that caused the collision. The crash report attributes fault solely to Sharon Ferguson, and nothing in the record supports a finding that Great West's insureds—Titus Carter and Mamo Transportation, Inc.—were in any way responsible for the collision. Despite the absence of any fault on the part of Great West's insureds, Defendant asks this Court to strike key elements of Great West's statutory interpleader action under a misreading of section 624.155(6)(a), Florida Statutes. Because liability is a prerequisite to any judgment in favor of claimants let alone any judgment in excess of policy limits, there remains serious doubt as to whether any payment is owed under the policies at all. Nevertheless, faced with an escalating risk that claimants would make demands exceeding the available $2 million in policy limits, Great West filed this interpleader action pursuant to Florida Statute § 624.155(6)(a).

That statute was enacted in 2023 as part of sweeping tort reform, with the express goal of providing certainty to insurers facing competing claims that exceed available policy limits. In such cases, the statute offers a clear and structured mechanism for insurers to interplead policy proceeds and avoid future bad faith liability—so long as they act within 90 days of receiving notice of such claims. Here, Defendant twists the statute into a trap. According to her, the 90-day clock began running before any demand was ever made and before Great West received any information in support of any claims in excess of policy limits. This interpretation is not only untethered from the statutory text—it defeats the very purpose of the law.

Great West did far beyond what the statute requires: upon receiving the first colorable notice of competing claims, it promptly filed an interpleader action. Defendant's motion to strike should be denied for the following reasons:

- Striking well-pled allegations is an extreme remedy and improper here. Courts disfavor motions to strike absent extreme prejudice or irrelevance—neither of which exists here.

- The statute permits interpleader to avoid bad faith—not as a post hoc penalty. Section 624.155(6)(a) provides a path to certainty and fairness in multi-claimant disputes. Defendant's reading converts that shield into a sword.

- A "claim" means a demand for insurance proceeds, not the filing of a complaint. And, a claim that could implicate policy limits would necessarily include supporting evidence—not just allegations. Even when a demand is made, the insurer is entitled to the opportunity to investigate liability and assess damages. And here, the insureds appear not to be at fault. The statute does not—and cannot—require blind payment of unsubstantiated demands.

- The statutory 90-day period was triggered—at the earliest—on November 14, 2024, when one claimant made a vague and undocumented verbal demand for settlement. That was the first instance of an arguable demand. The interpleader was filed 90 days later. A written demand from a competing claimant was not received until January 27, 2025, through a barebones letter provided by Defendant.

- Great West acted diligently and in good faith. It conducted a thorough investigation, warned its insureds of potential exposure—as it is legally obligated to do—and timely filed the interpleader action upon receiving a competing demand.

- Defendant mischaracterizes an internal communication. Defendant improperly relies on a letter sent from Great West to its insureds—intended to satisfy its duty of good faith—not to serve as statutory notice.

Defendant's motion seeks to impose a draconian consequence on Great West for failing to act faster—despite the absence of any legal duty to pay, any clear fault by its insureds, or any substantiated demand exceeding policy limits at the time of filing. There can be no bad faith without liability, and there can be no excess judgment without a judgment at all. The motion ignores the statutory text, upends the law's purpose, and would punish the very conduct the statute

was meant to protect. Great West acted precisely as the law intended: with caution, diligence, and in accordance with its statutory obligations. Defendant's motion should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

1. Great West issued a Commercial Lines Policy to Named Insured Mamo Transportation, Inc. ("Mamo"), bearing Policy No. GRT11197A with effective dates November 1, 2023 to November 1, 2024, which provides Covered Autos Liability Limits of $1,000,000 per "accident." (the "Policy"). [DE 1-1]. Great West also issued a Commercial Excess Insurance Policy to Named Insured Mamo, bearing Policy No. CEP01529A with effective dates November 1, 2023 to November 1, 2024, which provides liability limits of $1,000,000 per "occurrence." [DE 1-2].

2. On April 24, 2024, a motor vehicle accident occurred on Interstate 75 southbound in Marion County, Florida. [DE 1, ¶13].

3. The accident involved a commercial vehicle operated under the authority of Mamo and driven by Titus Carter, and a passenger vehicle driven by Sharon Ferguson. [DE 1-3].

4. According to the crash report, Sharon Ferguson's vehicle was signaling a left turn but, for unknown reasons, veered to the right, causing the right rear of her vehicle to collide with the front left of Mr. Carter's vehicle. [DE 1-3].

5. After the collision, Sharon Ferguson's vehicle left the roadway, struck a tree, and became engulfed in flames. [DE 1-3].

6. The accident resulted in the deaths of Sharon Ferguson and her son, Tyler Ferguson, and caused injuries to other occupants of the vehicle. [DE 1-3].

7. On June 5, 2024, the Estate of Sharon Ferguson filed a wrongful death lawsuit, alleging that Titus Carter was negligently operating a Mamo vehicle. [DE 38-1].

8. On June 10, 2024, the Estate of Tyler Ferguson filed a separate wrongful death lawsuit, raising substantially similar allegations. The Estate of Tyler Ferguson named the Estate of Sharon Ferguson as a defendant, alleging that Sharon Ferguson negligently operated a van, causing it to collide with the vehicle operated by Titus Carter. [DE 38-2].

9. On September 5, 2024, Great West sent a letter to its insureds and defense counsel, advising that the damages from the accident could ***potentially*** exceed the available policy limits and warning of the ***possibility*** of an excess judgment.

> As you are aware, a commercial auto being operated under the authority of Mamo Transportation Inc. was involved in an accident that occurred on April 24, 2024, on Interstate 75 southbound in Marion County, Florida. The accident caused the deaths of two individuals, Sharon Ferguson, age 49, and her fifteen (15) year old son, Tyler Ferguson. Three other occupants of the claimant vehicle were also injured. The purpose of this letter is to advise you that based on our investigation to date, it has become evident that the potential for an excess exposure does exist in this matter and the coverage provided by Great West Casualty Company ("Great West") may be insufficient for the claims that are being pursued in this matter. The damages resulting from this loss may have a value in excess of the policy limits of insurance provided to you by Great West. Based upon the potential damages and exposure presented by this loss, this shall serve as notice to you of an excess exposure. ***As your insurer, we have a duty to advise you of settlement opportunities, to advise you as to the probable outcome of the matter and/or litigation, and to warn you of the possibility of an excess judgment and any steps you might take to avoid the same.***

[DE 38-3].

10. On November 14, 2024, counsel for the Estate of Tyler Ferguson contacted defense counsel for Mamo and Titus Carter by phone to discuss settlement. [DE 1, ¶17].

11. On January 20, 2025, Great West received a confidential written demand for policy limits from the Estate of Tyler Ferguson, referencing the earlier settlement communication.

12. On January 27, 2025, Lawrencia Ferguson issued a barebones demand for policy limits. *See* (**Ex. A** – Jan. 27, 2025 Correspondence).

13. On February 12, 2025, Great West filed this interpleader action. [DE 1].

# MEMORANDUM OF LAW

## I. DEFENDANT FAILS TO ASSERT ENTITLEMENT TO THE RELIEF SOUGHT.

### A. Motions To Strike Are Disfavored.

A motion to strike under Federal Rule of Civil Procedure 12(f) is a "drastic remedy" that is "strongly disfavored" by the courts. *Manhattan Cap. Equities, Inc. v. JBTX3 Holdings, LLC*, No. 20-60926-CIV, 2021 U.S. Dist. LEXIS 37693, at *5 (S.D. Fla. Feb. 26, 2021). A court will typically deny such a motion unless the material at issue has "no possible relation to the controversy" and may cause prejudice to one of the parties. *Dina Twena v. Ford Motor Co*., No. 6:24-cv-1853-CEM-UAM, 2025 U.S. Dist. LEXIS 87192, at 9 (M.D. Fla. May 7, 2025).

Here, Defendant disputes Great West's entitlement to relief under § 624.155(6)(a); she has not shown that such relief is categorically unavailable. Allegations or prayers for relief should not be stricken merely because they relate to disputed legal theories or because their validity will turn on future factual development. *Id*. Whether Great West is entitled to a discharge or injunction is not an appropriate inquiry arising under a Rule 12(f) motion.

### B. Motions For More Definite Statement Are Rarely Appropriate.

Under Federal Rule of Civil Procedure 12(e), a motion for more definite statement is warranted only where a pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Such motions are generally disfavored because Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Madison v. City of Atlanta*, No. 1:24-cv-02009-MLB-RDC, 2025 U.S. Dist. LEXIS 36479, at 4 (N.D. Ga. Feb. 27, 2025). A complaint that provides fair notice of the claim and the grounds upon which it rests will suffice, even if some factual details are left for discovery. *See SN1017, Ltd.. v. World Jet, Inc.*, No. 23-60201 -CIV -SMITH, 2024 U.S. Dist. LEXIS 37898, at

*5 (S.D. Fla. Jan. 29, 2024) ("[A] defendant may not use a motion for more definite statement to conduct preliminary discovery on the claims pending against them.").

Paragraphs 17 and 22 of Great West's Complaint clearly allege the date Great West received notice of claims in excess of policy limits and the timing of the interpleader filing. These allegations are neither vague nor conclusory. Defendant may dispute their accuracy, but that does not entitle her to a more definite statement.

## II. THE STATUTORY FRAMEWORK: FLORIDA STATUTE § 624.155(6)(a).

In 2023, the Florida Legislature enacted section 624.155(6)(a), Florida Statutes as part of a comprehensive tort reform bill designed to address challenges insurers face when multiple third-party claimants assert competing claims in excess of policy limits arising from a single occurrence. Subsection (6) creates a statutory mechanism for insurers to limit exposure to extracontractual liability where certain conditions are satisfied. Specifically, the statute protects insurers from liability beyond the available policy limits if they file an interpleader action or tender policy limits into binding arbitration within 90 days of receiving notice of competing claims in excess of those limits.

Section 624.155(6) reads as follows:

> If two or more third-party claimants have competing claims arising out of a single occurrence, which in total may exceed the available policy limits of one or more of the insured parties who may be liable to the third-party claimants, an insurer is not liable beyond the available policy limits for failure to pay all or any portion of the available policy limits to one or more of the third-party claimants if, within 90 days after receiving notice of the competing claims in excess of the available policy limits, the insurer complies with either paragraph (a) or paragraph (b).
>
> (a) The insurer files an interpleader action under the Florida Rules of Civil Procedure. If the claims of the competing third-party claimants are found to be in excess of the policy limits, the third-party claimants are entitled to a prorated share of the policy limits

> as determined by the trier of fact. An insurer's interpleader action does not alter or amend the insurer's obligation to defend its insured.
> …

Subparagraph (a) permits the insurer to file an interpleader action, while subparagraph (b) provides for binding arbitration of the competing claims if agreed upon. The statute effectively supersedes Florida decisions like *Hernandez v. Travelers Ins. Co*., 356 So. 2d 1342 (Fla. 3d DCA 1978), which had limited the availability of interpleader in these contexts.

The statute was enacted to address situations that arose under pre-tort reform Florida case law, which placed insurers at risk of bad faith claims in situations where multiple claimants competed for limited funds and settlement might not satisfy all parties. *See* Fla. H.R. Comm. on Judiciary, CS for HB 837 (2023) Final Staff Analysis (May 12, 2023), available at https://flsenate.gov/Session/Bill/2023/837/Analyses/h0837z.CJS.PDF ("Practically speaking, ***this interpleader provision lessens the likelihood that an insurer will be liable for bad faith in a case with multiple claimants*** if the insurer pays the full amount of the policy limits at the outset.") (emphasis supplied); *see also Farinas v. Fla. Farm Bureau Gen. Ins. Co*., 850 So. 2d 555, 559 (Fla. 4th DCA 2003) ("***[W]hen there are multiple claimants and minimal policy limits, it follows that, insofar as the insureds' interest governs, the fund should not be exhausted without an attempt to settle as many claims as possible***.") (emphasis supplied).

Subparagraph (a) further provides that, if the claimants' competing claims are found to be in excess of the policy limits, the claimants are entitled to a prorated share of the policy limits as determined by a trier of fact. Whether an insurer's actions comply with the statute and entitle it to protection from extracontractual liability is a factual determination that must be made based on the record — it is not properly decided on a motion to strike at the pleading stage.

## III. GREAT WEST FILED THIS ACTION WITHIN THE STATUTORY PERIOD.

### A. A "Claim" Requires A Demand.

Statutory interpretation begins with the plain and obvious meaning of the statute. *Lacayo v. Versailles Gardens I Condo. Ass'n*, 325 So. 3d 295, 297 (Fla. 3d DCA 2021) (citing *Fla. Birth-Related Neurological Injury Compensation Ass'n v. Dep't of Admin. Hearings*, 29 So. 3d 992, 997 (Fla. 2010)). Indeed, the language of the statute is the best evidence of legislative intent—the "polestar" of statutory interpretation. *Harrell v. Ryland Grp.*, 277 So. 3d 292, 294 (Fla. 1st DCA 2019). "Where the Legislature did not define the words in the statute, the language is to be given its plain and ordinary meaning, which may be derived from a dictionary." *Id.*

A "claim" means a demand for payment under a policy. *See Claim*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/claim, (last visited June 26, 2025) (defining the term/noun "claim" as "a written request asking an organization to pay you an amount of money that you believe they owe you."); *see also Claim*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/claim, (last visited June 26, 2025) ("a demand for something due or believed to be due," and providing the example "an insurance claim").

The Supreme Court of Michigan has similarly elaborated:

> ***The point is that making a claim for insurance benefits is not the same as filing a lawsuit. This commonsense, contextual understanding is also consistent with how an insurance claim is understood within the insurance industry.*** *See, e.g.,* National Association of Insurance Commissioners, *Glossary of Insurance Terms* (defining "claim" as "a request made by the insured for insurer remittance of payment due to loss incurred and covered under the policy agreement"); GEICO, *Glossary of Insurance Terms and Definitions* (defining "claim" as "[a]ny request or demand for payment under the terms of the insurance policy"); International Risk Management Institute, Inc., *Glossary* ("Claim — used in reference to insurance, a claim may be a demand by an individual or corporation to recover, under a policy of insurance, for loss that may come within that policy.").

*Griffin v. Trumbull Ins. Co.,* 509 Mich. 484, 498 n.5 (2022) (citations omitted) (emphasis supplied).

This definition is consistent among courts determining the meaning of a "claim." *See, e.g., Zurich Am. Ins. Co. v. Syngenta Crop Prot. LLC*, 314 A.3d 665, 676 (Del. 2024) ("A 'claim' is a challenging request, a demand of a right, a calling upon another for something due, a demand for benefits or payment, a privilege to something, a title to something in the possession of another, an assertion or statement, or a demand for payment under an insurance policy upon the happening of a contingency against which the policy is issued."); *MGIC Indem. Corp. v. Home State Sav. Asso*., 797 F.2d 285, 288 (6th Cir. 1986) ("it seems to us, the only kind of 'claim or claims' that could trigger the insurer's obligation to pay would be a demand for payment of some amount of money"); *Pine Mgmt. v. Colony Ins. Co*., No. 1:22-cv-02407 (MKV), 2023 U.S. Dist. LEXIS 46854, at *8 (S.D.N.Y. Mar. 20, 2023) ("Here, the HK Letter alleged misconduct, cited theories of liability, referenced legal authority, demanded specific documents, requested an accounting, and suggested a meeting. That is sufficient under New York law to constitute a claim.").

In short, the existence of a lawsuit or an accident cannot itself constitute a "claim" within the meaning of section 624.155(6)(a).

**B. <u>No Ostensive Claim Was Made Before November 14, 2024.</u>**

The first ***arguable*** demand—let alone competing demand—was made during a phone call on November 14, 2024, by counsel for the Estate of Tyler Ferguson. [DE 1, ¶17]. This was the earliest possible notice of a "claim" that could even implicate section 624.155(6)(a). Realistically, however, even that phone call lacked substantive documentation or valuation. A follow-up written demand was received on January 20, 2025. A written demand from Lawrencia Ferguson was received on January 27, 2025. That January 27 letter was the first document to establish competing claimants that both demanded policy limits. (**Ex. A** – Jan. 27, 2025 Correspondence). Nevertheless,

in an abundance of caution and to comply in good faith with subsection (6)(a), Great West filed this interpleader action on February 12, 2025—90 days after the November 14 phone call and a mere 16 days after receiving the January 27 written demand from Lawrencia Ferguson's counsel.

The January 27 letter confirmed that multiple parties were seeking a share of the same policy funds. (**Ex. A** – Jan. 27, 2025 Correspondence). That January 27 demand—the very document that should include all necessary information for Great West to make this so-called determination that there are competing claims in excess of the available policy limits—is replicated below in its entirety for the Court's consideration.

> It was a pleasure speaking with you on Friday. As I discussed with you, we represent Lawrencia Ferguson, Santana Ballista and Legacy Ballista. Lawrencia sustained a massive fracture to her right leg. Her son, Santana, also sustained a fractured arm. Lawrencia has already undergone reconstructive surgery. I am not yet in possession of their medical records nor bills.
>
> However, I understand that there is a limited $2M single limit policy for your client. With what we already know about the damages and liability it is apparent that the policy limits are insufficient to fully compensate my clients. Therefore, we are now making a demand for payment of the policy limits. I understand that new counsel for the Estate is coming into the case. I do not know their position on making a claim against your client. I only know that my client and Mr. Davis' client have now made a demand for payment of the policy limits and that those limits should be tendered forthwith to our respective clients.

This letter is the closest document Great West has received to a purported competing claim.

Indeed, district courts in Florida consistently recognize that "competing claims" means just that—adverse demands for the same proceeds. Mere theoretical exposure could not suffice as notice of competing claims in excess of the available policy limits. *Accord, e.g., Life Ins. Co. of N. Am. v. Rainey*, No. 3:23-cv-993-MMH-MCR, 2024 U.S. Dist. LEXIS 70088, at *8-9 (M.D. Fla. Apr. 5, 2024) (interpleader was proper where the insurer pled that "[c]ompeting claims for the life

and accident insurance benefits ***have been submitted***") (emphasis supplied); *Kruse v. Mass. Mut. Life Ins. Co*., No. 17-cv-61115-BLOOM/Valle, 2018 U.S. Dist. LEXIS 245337, at *13 (S.D. Fla. Jan. 25, 2018) (denying motion to dismiss interpleader because claimants were "vying for the same proceeds pursuant to the same Policy" where one party demanded policy proceeds in December 2016 ***and another party demanded policy proceeds*** in March 2017, thus notifying the carrier of competing claims for the proceeds); *N. Am. Co. for Life & Health Ins. v. Dye*, No. 3:11-cv-1234-J-34MCR, 2012 U.S. Dist. LEXIS 144549, at *5 (M.D. Fla. Aug. 24, 2012) (where three defendants requested the policyholder's death benefits, interpleader was proper: "Plaintiff filed its Complaint ***in response to the defendants' conflicting and competing claims to the life insurance proceeds*** due under the Policy Certificate and Group Policy….It is undisputed that there is a single fund at issue and that there are adverse claims to the fund.") (emphasis supplied).

Florida law recognizes that insurers are entitled to a reasonable time to investigate claims and assess exposure before making settlement decisions. "An insurer—acting with diligence and due regard for its insured—is allowed a reasonable time to investigate a claim; no obligation exists to tender policy limits in advance of a settlement offer without time for investigation." *Ellis v. Geico Gen. Ins. Co.*, No. 21-12159, 2022 U.S. App. LEXIS 4180, at *13 (11th Cir. Feb. 15, 2022); *see also Johnson v. Geico Gen. Ins. Co.*, 318 F. App'x 847, 851 (11th Cir. 2009) (similar).

The most perplexing aspect of Defendant's argument is that Defendant knows the foregoing information is wholly insufficient to allow Great West to assess its insureds' exposure. It contained no medical records, no theory of liability against Great West's insureds, no sliver of information in support of a demand for $2 million. Significantly, "the conduct of a claimant and the claimant's attorney is relevant to determining the 'realistic possibility of settlement.'" *Cardenas v. Geico Cas. Co.*, 760 F. Supp. 2d 1305, 1309 (M.D. Fla. 2011). This is reinforced by section 624.155(4)(a),

which bars bad faith actions where the insurer tenders the lesser of the policy limits or the amount demanded within 90 days of receiving a claim "***accompanied by sufficient evidence to support the amount of the claim***." (emphasis supplied). That provision confirms that an insurer's duty to act under Florida's bad faith framework arises only after receipt of both a demand and adequate documentation. Here, no such demand with supporting evidence was ever received prior to the filing of this interpleader. The statute thus underscores Great West's right to investigate liability and valuation before any obligation is triggered.

Indeed, Florida courts have found that the conduct of a Claimant and the Claimant's attorney is relevant to determining the realistic possibility of settlement and declined to hold an insurer liable for bad faith where settlement was rendered impossible due to the actions of Claimant or Claimant's counsel. *See, e.g., Novoa v. Geico Indem. Co.,* 542 F. App'x 794, 796 (11th Cir. 2013) (no bad faith where Geico repeatedly contacted claimant to discuss the claims and settle the case and claimant "declined every settlement offer [the insurer] made, refused on multiple occasions to discuss settlement, delayed providing [the insurer] information it needed to propose a settlement, never made a counteroffer, and never made a settlement proposal"); *Cardenas v. GEICO Cas. Co.*, 760 F. Supp. 2d 1305, 1309 (M.D. Fla. 2011) (no bad faith where insurer attempt to contact claimant about the status of the claim and proposed release but claimant failed to respond); *Maldonado v. First Liberty Ins. Corp.*, 342 F. App'x 485, 487-88 (11th Cir. 2009) ("no reasonable juror could find that the cause of the failure to settle was attributable to [the insurer]"). This is now codified at § 624.155(5)(b). ("The insured, claimant, and representative of the insured or claimant have a duty to act in good faith in furnishing information regarding the claim, in making demands of the insurer, in setting deadlines, and in attempting to settle the claim.").

Section 624.155(6)(a) was enacted to reduce bad faith exposure in multi-claimant scenarios, not to create traps for insurers who act diligently. *See* Fla. H.R. Comm. on Judiciary, CS for HB 837 (2023) Final Staff Analysis (May 12, 2023). Here, Great West provided timely notice to its insureds, evaluated liability, gathered relevant facts, and filed an interpleader within days of receiving an ***indication*** of competing claims. To strike its relief simply because the interpleader was not filed the moment lawsuits were initiated, particularly when liability against Great West's insureds remains unsubstantiated, would contravene the statute's purpose.

**C. <u>Defendant's Evidence Only Confirms That Great West Complied With Its Good Faith Obligations Under Florida Law.</u>**

On September 5, 2024, Great West advised its insureds of the ***potential*** for excess exposure. [DE 38-3]. This advisory letter fulfilled the insurer's obligation to warn of the possibility of an excess judgment—it was not an admission that the requirements of § 624.155(6)(a) had been met. "The insurer's duty of good faith '***obligates the insurer*** to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid [the] same.'" *Montanez v. Liberty Mut. Fire Ins. Co.*, 824 F. App'x 905, 910 (11th Cir. 2020) (emphasis supplied) (citing *Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980)). "The duty also requires the insurer to 'investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.'" *Id.* "To fulfill its duty in handling claims against its insured, an insurer must exercise 'the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business.'" *Id.*

In that correspondence, Great West further requested information regarding all available insurance policies that could apply. This factor affects the determination of the likelihood of an

excess judgment because it establishes the layers of protection available to an insured. *Perera v. United States Fid. & Guar. Co.*, 35 So. 3d 893, 902 (Fla. 2010) (holding that an excess judgment is the difference between "***all available insurance coverage*** and the amount of the verdict recovered by the injured party") (emphasis supplied).

The duty of good faith requires insurers to advise the insured of potential exposure, but does not require blind or immediate acceptance of liability. *Montanez v. Liberty Mut. Fire Ins. Co.*, 824 F. App'x 905, 910 (11th Cir. 2020).

## IV. DEFENDANT MISCONSTRUES WHEN THE 90-DAY PERIOD BEGINS.

Defendant's motion is premised on the erroneous assumption that the 90-day period under Florida Statute § 624.155(6)(a) began on the date of the accident, or at the latest, upon the filing of the initial lawsuits. That interpretation is inconsistent with the plain language of the statute and well-established Florida law. The first arguable notice of a claim for policy limits occurred on November 14, 2024, when counsel for the Estate of Tyler Ferguson made a verbal settlement request. The written demand from Lawrencia Ferguson's counsel, received on January 27, 2025, provided the clearest indication of a competing claim for the available limits. Great West filed this interpleader action within 90 days of either of these dates.

### A. A Letter Regarding Insureds' *Potential* Exposure Does Not Constitute Notice Of Competing Claims In Excess Of Policy Limits.

As discussed *supra*, Great West's September 5, 2024 correspondence to its insureds reflected its duty of good faith to warn of potential excess exposure—not a concession that statutory notice of competing claims had been received. Great West is not required to tender limits blindly, nor to assume fault where its investigation points to the negligence of another. An insurer's duty of good faith depends on a realistic opportunity to settle a valid claim—not the mere

possibility of one. ***Until a demand is made and supported, and until the insurer can assess the facts, its obligation is to proceed prudently, not recklessly***.

Establishing fault is a necessary condition for establishing liability. An insurer's affirmative duty to initiate settlement negotiations will exist ***only*** where liability is clear. *Welford v. Liberty Ins. Corp.*, 190 F. Supp. 3d 1085, 1095 (N.D. Fla. 2016) (holding that insurer did not commit bad faith by failing to initiate settlement discussions where liability was not clear on the facts of this case, as the Florida Highway Patrol officer investigating the crash, the investigator employed by decedent's original attorney, and his own expert witness all expressed serious doubt and misgivings about the driver's liability for the accident). ***Where liability is clear***, and injuries so serious that a judgment in excess of the policy limits is likely, an insurer has an affirmative duty to initiate settlement negotiations. *Powell v. Prudential Prop. & Cas. Ins. Co.*, 584 So. 2d 12, 14 (Fla. 3d DCA 1991) (citing *Farmers Ins. Exchange v. Schropp*, 222 Kan. 612, 567 P.2d 1359 (1977)). Disagreement over the settlement value of a claim does not equate to bad faith. "Section 624.155 does not impose on an insurer the obligation to pay whatever the insured demands." *Talat Enters. v. Aetna Cas. & Sur. Co.*, 952 F. Supp. 773, 778 (M.D. Fla. 1997).

Great West's investigation indicated that Sharon Ferguson was at fault for the collision and there was no information provided to the contrary. "Generally, there is no duty to control the conduct of a third person to prevent [that person] from causing physical harm to another." *Knight v. Merhige*, 133 So. 3d 1140, 1145 (Fla. 4th DCA 2014). "In the absence of a special relationship between the plaintiff and defendant, a duty to protect the plaintiff from third-party conduct will arise if the defendant is in actual or constructive control of: (1) the instrumentality of the harm; (2) the premises upon which the tort is committed; or (3) the person who committed the tort." *Waves of Hialeah, Inc. v. Machado*, 300 So. 3d 739, 743 (Fla. 3d DCA 2020).

In sum, where no fault is attributable to Great West's insureds, any argument that Great West knew of competing claims exceeding policy limits must fail—the absence of liability cannot be reconciled with Defendant's position.

**B. An Accident Does Not Constitute Notice Of Competing Claims In Excess Of Policy Limits.**

Subsection (6)(a) triggers the 90-day period upon the insurer's receipt of notice of competing claims in excess of available policy limits—not merely upon knowledge of an accident. Fla. Stat. §624.155. An accident is not a claim. Moreover, the mere occurrence of a serious accident, even one involving fatalities or catastrophic injuries, does not automatically provide notice of competing claims or even establish that policy limits may be exceeded. The Policy only requires Great West to pay where the insured is liable: "[w]e will pay all sums an 'insured' ***legally must pay as damages*** because of "bodily injury" or 'property damage' to which this insurance applies…." [DE 1-1 at 25].

The fact that Great West's insureds were involved in a vehicle accident does not mean that they will be held liable for the incident. To the contrary, Florida law is clear that negligence will not be presumed from the mere happening of an accident. *See, e.g.*, *Whitlow v. Tallahassee Mem'l Healthcare, Inc*., 48 Fla. L. Weekly D1647 (Fla. 1st DCA August 16, 2023) ("Negligence will not be presumed merely because of the happening of an accident."); *Emmons v. Baptist Hosp*., 478 So. 2d 440, 442 (Fla. 1st DCA 1985) ("it is fundamental that the mere occurrence of an accident does not give rise to an inference of negligence").

While there were fatalities in the underlying incident, "[t]here is no duty under Florida law for an insurer in a multiple competing claimant situation to immediately tender a full split limit to the most injured victim, even where the insurer knows, and the other claimants agree, which victim is the 'most injured.'" *Houston v. Progressive Am. Ins. Co*., No. 8:13-CV-194-T-35AEP, 2014 WL

12576820, at *5 (M.D. Fla. May 19, 2014); *see also Montanez v. Liberty Mut. Fire Ins. Co*., 478 F. Supp. 3d 1242, 1248-49 (S.D. Fla. 2019) ("[T]he Court is unaware of…any authority requiring an insurance company to immediately tender its full policy limits to the most injured claimant and forgo an investigation, or global settlement conference with the same.").

Here, the crash report attributed fault to Sharon Ferguson, not to Great West's insureds. There was no basis at the time of the accident to conclude that the insureds were liable or that any potential competing claims would exceed policy limits.

### C. A Lawsuit Does Not Constitute Notice Of Competing Claims In Excess Of Policy Limits.

The filing of a lawsuit does not, by itself, constitute notice of competing claims as contemplated by the statute. ***Claims must not only exist, but must also be competing and in total exceed the policy limits.*** The complaints initially filed were inconsistent with Great West's investigation and did not, on their face, establish that claims would exceed the available $2 million in coverage. *See* [DE 38-1]; *see also* [DE 38-2]. Indeed, the complaint filed by the Estate of Sharon Ferguson alleged an amount in controversy of over $50,000, [DE 38-1, ¶2], and the one filed by the Estate of Tyler Ferguson alleged damages in excess of $750,000, [DE 38-2, ¶2], which altogether (and in light of Sharon Ferguson's liability) does not begin to approach the $2 million policy limits.

Moreover, at the time that lawsuits were filed by the Estate of Tyler Ferguson and the Estate of Sharon Ferguson, Great West had determined: (i) its insureds did not cause the accident; (ii) there was no demand made directed to Great West and there was no information provided to Great West regarding any demand that could exceed policy limits; and (iii) there were no competing claims because there were no claims made at all.

On March 24, 2023, Florida added subsection (6) to section 768.81. That new subsection provides that a plaintiff who was more than fifty-percent at fault cannot recover anything from the defendant. *See* Fla. Stat. § 768.81(6) ("In a negligence action to which this section applies, any party found to be greater than 50 percent at fault for his or her own harm may not recover any damages."). "In other words, Florida changed from a pure comparative-negligence to a modified-comparative-negligence system." *Gonzalez v. Seabest, Inc*., No. 22-cv-62403-ALTMAN/Strauss, 2024 U.S. Dist. LEXIS 141014, at *45 n.7 (S.D. Fla. Aug. 7, 2024). Insofar as the Estate of Sharon Ferguson might have sought to make a claim for insurance proceeds, expectations must be tempered by the fact that Sharon Ferguson caused the accident. [DE 1-3]. Similarly, with respect to any other potential claimants, their injuries resulted from the actions of Sharon Ferguson. [*Id.*].

That factual and legal backdrop undercuts Defendant's assertion that the mere filing of lawsuits provided notice of competing claims in excess of limits.

## V. DEFENDANT'S INTERPRETATION INVITES IMPROPER USE OF PRIVILEGED INFORMATION NOT SUBJECT TO DISCOVERY.

Defendant's argument rests on the premise that Great West's internal communication to its insureds—an advisory letter drafted in furtherance of the insurer's good faith duties—can serve as the trigger for statutory deadlines under section 624.155(6)(a). This premise is untenable.

The September 5, 2024 correspondence was not a concession of liability, nor an admission that the requirements of section 624.155(6)(a) had been met. It was sent exclusively to Great West's insureds and their defense counsel to fulfill Great West's duty to advise the insured of potential exposure. *Montanez v. Liberty Mut. Fire Ins. Co*., 824 F. App'x 905, 910 (11th Cir. 2020). That obligation arises independently of any demand, claim, or statutory trigger. It is also inequitable for Defendant to use a privileged communication against Great West when the document is, on its face, between the parties to the tripartite relationship. "[T]he confidential communications between

the insured, the insurer, and any counsel representing them regarding the matter of common interest are protected by the attorney-client privilege from discovery by third parties." *Travelers Indem. Co. v. Old Dominion Ins. Co.*, No. 8:19-cv-466-T-30AAS, 2020 U.S. Dist. LEXIS 175528, at *5 (M.D. Fla. Sep. 24, 2020).

Permitting a third-party claimant to rely on such internal insurer correspondence—particularly one directed ***only*** to insureds and retained defense counsel—risks distorting the purpose of interpleader. Accepting Defendant's position would also lead to absurd results—namely, that the start of the 90-day period under the statute depends not on notice from a claimant, but ***on the insurer's own internal evaluation of an accident***. That interpretation flips the statute on its head. *See Warner v. City of Boca Raton*, 887 So. 2d 1023, 1033 n.9 (Fla. 2004) ("a statutory provision should not be construed in such a way that it renders the statute meaningless or leads to absurd results"); *Atkinson v. State*, 791 So. 2d 537, 538-39 (Fla. 2d DCA 2001) (statutes should not be construed to produce "unreasonable, harsh, or absurd consequences").

Florida law does not permit third-party claimants to use privileged materials against insurers unless and until a bad faith action has accrued. *See Allstate Indem. Co. v. Ruiz*, 899 So.2d 1121 (Fla. 2005). This is not such a case. There is no excess judgment. There is no bad faith claim. There is no entitlement to discovery of internal communications. Yet Defendant is attempting to use that information to reverse-engineer an argument that Great West acted untimely. That strategy is fundamentally incompatible with Florida law. *See Gov't Employees Ins. Co. v. Rodriguez*, 960 So. 2d 794, 796 (Fla. 3d DCA 2007) (stating that in a lawsuit by a third party against GEICO's insured, "[t]he content of GEICO's internal claims handling procedures is immaterial").

Defendant undermines both the tripartite relationship and the statute's goal of encouraging early, good faith resolution of multi-claimant disputes. Great West should not be penalized for

fulfilling its obligations to its insureds, and the Court should reject Defendant's effort to transform privileged internal communication into a statutory sword.

**CONCLUSION**

Defendant's motion rests on a flawed interpretation of Florida Statute § 624.155(6)(a) and a misapplication of Rule 12. The interpleader action was timely filed, the statutory requirements were satisfied, and the relief sought is legally proper. Accordingly, the Court should deny Defendant's Motion to Strike or, in the alternative, for a More Definite Statement, and grant such other relief as it deems just and proper.

Dated: July 2, 2025

**DINSMORE & SHOHL LLP**
200 S. Biscayne Boulevard
Suite 2401
Miami, FL 33131
Telephone: 786-957-1136
Facsimile: 786-957-1158

*/s/ Seth V. Alhadeff*
SETH V. ALHADEFF
Florida Bar No. 525235
Seth.Alhadeff@dinsmore.com
RAVIKA R. MARCADIS
Florida Bar No. 123659
Ravika.Rameshwar@dinsmore.com
LORENA M. ALFONSO
Florida Bar No. 1010903
Lorena.Alfonso@dinsmore.com
JANICE LOPEZ
Florida Bar No. 1032538
Janice.Lopez@dinsmore.com

*Attorneys for Plaintiff Great West Casualty Company*