UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

GREAT WEST CASUALTY COMPANY CASE NO.: 25-cv-20642-JB

Interpleader-Plaintiff;

v.

NILDA MERALLA, as Personal Representative of the Estate of Tyler Brian Escudero Ferguson, RODRICK ROLLE, as Personal Representative of the Estate of Sharon Ferguson, LAWRENCIA FERGUSON, individually and as natural parent and guardian of minors, S.B. and L.B., MAMO TRANSPORTATION, INC., RYDER TRUCK RENTAL, INC

Interpleader-Defendants.

_____________________________________/

**DEFENDANT LAWRENCIA FERGUSON, INDIVIDUALLY AND AS NATURAL PARENT AND GUARDIAN OF MINORS S.B., and L.B's REPLY TO PLAINTIFF, GREAT WEST CASUALTY COMPANY'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE OR ALTERNATIVE MOTION FOR MORE DEFINITE STATEMENT**

Defendant, LAWRENCIA FERGUSON, individually and as natural parent and guardian of minors, S.B. and L.B. (collectively "Defendant"), by and through undersigned counsel, respectfully file their Reply to Plaintiff, Great West Casualty Company's Response in Opposition [DE 46] to Defendant's Motion to Strike or Alternative Motion for More Definite Statement [DE 38] .

Great West Casualty Company's opposition mischaracterizes both the statutory safe harbor under § 624.155(6) and the procedural posture of this interpleader. Contrary to its assertions, Great West did not file this interpleader action within the 90-day deadline established by Florida law. Because compliance with § 624.155(6) is a strict statutory precondition to the discharge and injunctive relief it seeks, its requests for those remedies must be stricken.

## I. SECTION 624.155 ESTABLISHES DISTINCT SAFE HARBORS

Section 624.155 creates three distinct safe harbors, each addressing different scenarios. Subsection (4)(a) establishes a 90-day period triggered by receipt of a claim supported by documentation substantiating the claim's value, during which an insurer may avoid bad faith exposure by tendering limits or the amount demanded. Subsection (5) provides a separate 60-day cure period upon receipt of a civil remedy notice. Subsection (6), applicable here, establishes a 90-day period triggered when two or more competing claims arising from a single occurrence may exceed policy limits.

## II. THE WRONGFUL DEATH LAWSUITS WERE CLAIMS UNDER SECTION 624.155(6)

Defendant's argument that the wrongful death lawsuits filed against Great West's insureds do not constitute "claims" under § 624.155(6) lacks merit. The statutory text, procedural rules, controlling caselaw, and Great West's own correspondence demonstrate that these lawsuits are properly recognized as "claims" for purposes of triggering the statutory safe harbor period.

Under both Florida and federal procedural rules, the filing of a lawsuit is, by definition, the assertion of a claim for relief. Florida Rule of Civil Procedure 1.110 and Federal Rule of Civil Procedure 8(a) each define a "claim for relief" as a pleading asserting entitlement to relief and demanding judgment. Thus, in both state and federal practice, the commencement of a civil action constitutes the formal assertion of a claim. There can be no dispute that a wrongful death lawsuit demanding compensatory damages against the insured is, as a matter of law, a "claim."

This interpretation is consistent with principles of insurance law.

> "[G]enerally speaking, a 'claim' in a liability policy is considered to be an assertion by a third-party to the effect that the insured has caused the claimant damages through some acts or omissions and that the claimant intends to hold the insured responsible for all or a portion of the damages so caused."
>
> 20 Eric Mills Holmes, *Holmes' Appleman on Insurance 2d*, § 130.2 (2002)

Florida courts have applied similar reasoning. In *Mrowczynski v. Vizenthal*, 445 So. 2d 1099, 1101 (Fla. 4th DCA 1984), the described a claim as "a demand for something due as a right." Likewise, in *Fisher v. Herrera*, 367 So. 2d 204, 206 (Fla. 1978), the Florida Supreme Court explained that in the context of medical malpractice, a claim is "essentially a statement of facts describing the alleged acts of malpractice; that is, a pleading comparable to a complaint under the Florida Rules of Civil Procedure."

The content of the complaints further underscores this conclusion. Both complaints assert specific negligence against Great West's insured driver, including failure to maintain control, speeding, and reckless operation. [DE 38-1; DE 38-2]. Both also allege vicarious liability against the insured carrier, with one complaint adding direct negligence claims for hiring, training, and supervision. *Id.* Both lawsuits expressly demanded compensatory damages from the Great West's insureds. *Id.* These are not theoretical or placeholder claims; they are detailed negligence allegations seeking compensatory damages for wrongful death.

Great West's communication to their insured further confirms these lawsuits were treated as claims. In its September 5, 2024 correspondence, Great West expressly acknowledged the wrongful death lawsuits as "claims." The letter advised the insureds that "the potential for an excess exposure does exist in this matter and the coverage provided to you by Great West Casualty Company… may be insufficient for the **claims** that are being pursued in this matter." [DE 38-3]. Elsewhere in the same correspondence, Great West assured its insureds that assigned defense counsel would attempt to resolve "the **claims** consistent with the pertinent Florida statutes and Florida case law, which may be applicable to this **claim**." *Id.*

The wrongful death actions filed against Great West's insureds are "claims" as a matter of law, as a matter of industry usage, and by Great West's own admission. Accordingly, the only remaining question is whether these competing claims presented the potential to exceed the available policy limits. As discussed below, they unquestionably did.

## III. The Wrongful Death Lawsuits Provided Notice That the Total of the Claims May Exceed Policy Limits

Great West's argument that the wrongful death lawsuits did not provide notice that the total of the claims may exceed policy limits is legally unsupportable. Florida Statute § 624.155(6) requires only notice that competing claims "may exceed" policy limits. It does not require certainty or submission of supporting evidence. "Where the Legislature did not define the words in the statute, the language is to be given its plain and ordinary meaning, which may be derived from a dictionary." *Harrell v. Ryland Grp.,* 277 So. 3d 292, 294 (Fla. 1st DCA 2019). "May" is used to indicate a possibility of something occurring. *See May,* CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/may, (last visited July 17, 2025) (defining the modal verb "may" as "used to express possibility."); *see also Claim,* OXFORD DICTIONARY, https://www.oxfordlearnersdictionaries.com/us/definition/english/may_1, (last visited July 17, 2025) ("used to say that something is possible.") Thus, the Legislature's deliberate use of "may exceed" establishes a low threshold, triggering the insurer's obligation to act when potential excess exposure becomes a potential or possibility.

This low threshold was plainly met upon Great West's receipt of the wrongful death lawsuits. The damages in wrongful death claims are, by their nature, substantial. Florida law recognizes the compensatory damages recoverable in wrongful death actions include not only economic losses but intangible damages such as pain and suffering, loss of companionship, and mental anguish. See Fla. Stat. § 768.21. Each wrongful death lawsuit, standing alone, presented the potential for significant liability exposure. Together, they placed Great West on clear notice of competing claims the total of which "may exceed" the available coverage.

If there was any doubt, Great West's September 5, 2024 correspondence to its insureds confirmed this understanding. In its September 5, 2024 letter to its insureds, Great West acknowledged that, based on its investigation, "**the potential for an excess exposure does exist in this matter** and the coverage provided… may be insufficient for the claims that are being pursued."[1] [DE 38-3]. The letter continued: "[t]he damages resulting from this loss may have a value in excess of the policy limits of insurance provided to you by Great West." *Id.* These

---

[1] Great West's correspondence identified multiple claimants, including individuals who had not yet filed suit. Specifically, the letter listed five claimants: Legacy A. Ballista-Ferguson, Tyler B. Ferguson, Lawrencia Suekeena Ferguson, Santana A. Ballista, and Sharon Hortence Ferguson. Great West was clearly already on notice of their claims, despite the absence of a formal lawsuit.

admissions, made 160 days before the filing of this interpleader action, confirm that Great West recognized the potential for excess exposure long before initiating these proceedings.

*a. Fla. Stat. § 624.155(6) Imposes No Evidentiary Burden on Claimants*

Great West's assertion that it received no medical records, theory of liability, or valuation evidence misstates the legal standard. Section 624.155(6), Fla. Stat., requires only notice that competing claims may exceed policy limits. It imposes no burden on claimants to submit valuations, medical records, or other proof of damages. The Legislature knew how to impose such evidentiary requirements—having done so in subsection (4)(a)—but deliberately omitted them from subsection (6). That omission must be respected. *Coates v. R.J. Reynolds Tobacco Co.*, 365 So. 3d 353, 354 (Fla. 2023) ("[T]he words of a governing text are of paramount concern, and what they convey, in their context, is what the text means…. [Courts] do not add words to a statute in the guise of interpreting it.")

Nevertheless, Great West improperly attempts to import the evidentiary requirements of §624.155(4)(a) onto subsection (6), arguing that the 90-day clock never began because it received no evidence supporting the claims asserted in the wrongful death lawsuits. This argument ignores both the statute's plain language and Great West's own investigative obligations.

Even if claimants bore such a burden, which they do not, the record demonstrates that Great West was not lacking detail regarding the theories of liability against their insured. Each lawsuit alleged not only the death of an individual but specific acts of negligence against both the driver, Titus Daniel Carter, and the motor carrier, Mamo Transportation, Inc. [DE 38-1; DE 38-2]. Both complaints set forth that Carter operated the commercial vehicle negligently, including by operating at unsafe speeds, failing to maintain control, failing to keep a proper lookout, and operating the vehicle in a reckless, inattentive, and distracted manner, and that Mamo was vicariously liable. *Id.* One complaint further alleged that Mamo Transportation was directly liable for negligent hiring, retention, training, and supervision of its driver. To characterize these lawsuits as providing no theory of liability is simply inaccurate.

Its argument regarding the absence of medical records is equally misplaced. There were no medical records to produce. Both decedents died at the scene, as Great West and its insureds well

knew. [DE 1-3]. Both decedents burned alive in the aftermath of the collision. The absence of medical records is not indicative of a failure by claimants to substantiate their claims; it is the result of the nature of the incident itself.

*b. THE 90-DAY SAFE HARBOR PERIOD EXISTS TO AFFORD THE INSURER TIME TO FULFILL ITS CLAIMS HANDLING OBLIGATIONS*

Once an insurer receives notice of competing claims that may exceed policy limits, an insurers duty of good faith places the burden on them to investigate and act. The 90-day safe harbor period established under § 624.155(6) is not a passive waiting period. Rather, it reflects the Legislature's intent to afford insurers a limited, final opportunity to fulfill their claims handling obligations and make a prompt, informed decision whether to interplead the policy limits or initiate arbitration. While *Fridman v. Safeco Ins. Co. of Ill.*, 185 So. 3d 1214, 1220 (Fla. 2016) (citing *Talat Enters. v. Aetna Cas. & Sur. Co.,* 753 So.2d 1278, 1284 (Fla. 2000)), addressed the distinct 60-day safe harbor period following a civil remedy notice under § 624.155(5), the Florida Supreme Court's reasoning is instructive: such statutory windows exist to give insurers a final chance to investigate and comply with their good faith duties before facing potential excess liability. That same principle applies here.

Florida law defines those good faith duties clearly. The insurer must advise its insured of settlement opportunities, inform the insured of the probable outcome of litigation, warn of the possibility of an excess judgment, and advise as to any steps the insured might take to avoid such exposure. *Macola v. Gov't Emples. Ins. Co.*, 953 So. 2d 451, 455 (Fla. 2006). The insurer must also promptly investigate the facts, fairly consider settlement opportunities, and settle claims where a reasonably prudent person faced with the prospect of paying the judgment would do so. *Id.*

The Legislature's choice to provide a 90-day period recognizes the time reasonably necessary for an insurer to fulfill by evaluating its insured's exposure and deciding whether to interplead the policy limits. Importantly, the statute provides that the 90-day period begins upon "receiving notice of competing claims." The plain language of the statute thus places the burden squarely on the insurer to act upon receipt of notice—from whatever source—that competing claims arising from a single occurrence may exceed policy limits.

An insurer who delays or fails to act within this period assumes the risk of forfeiting safe harbor protections offered. The statutory framework is intended to incentivize prompt claims handling and early resolution, not delay. It is the insurer's affirmative obligation to investigate and act. Yet, over the eight months preceding its interpleader, Great West conducted only a single deposition in the underlying wrongful death actions. This limited activity cannot reasonably be characterized as a diligent investigation. Indeed, the lawsuits themselves expanded Great West's opportunity to investigate its exposure. Great West's failure to investigate and act upon receipt of the wrongful death lawsuits and its own acknowledgment of potential excess exposure was a deliberate choice. That inaction now precludes Great West from invoking the safe harbor protections provided by § 624.155(6).

*c. GREAT WEST'S POSITION THAT LIABILITY HAD TO BE CONFIRMED BEFORE THE SAFE HARBOR PERIOD BEGAN IS LEGALLY UNSUPPORTABLE AND INTERNALLY INCONSISTENT*

Great West, in essence, argues that the 90-day safe harbor under § 624.155(6) never began because the police report[2] suggested its insured was not at fault. Carrying that forward, Great West continues that the statutory safe harbor clock in which to file an interpleader cannot begin until fault on the part of its insureds is clear or confirmed. This argument fails both under the statutory text and Great West's own admissions.

Section 624.155(6) expressly states that the safe harbor is triggered upon notice of claims that "**may exceed**" available policy limits. The Legislature's deliberate use of "may exceed" reflects that the safe harbor is not conditioned upon certainty, nor upon the insurer's subjective assessment of liability. Rather, the standard is whether the total of the claims presents a potential to exceed the available limits. Adopting such an interpretation would effectively grant insurers an indefinite safe harbor period, as they could simply assert that liability remained unclear to avoid triggering their statutory option. This interpretation is incompatible with both the text and tenants of statutory construction. See *Forsythe v. Longboat Key Beach Erosion Control Dist*., 604 So. 2d

[2] An insurer's duty to investigate cannot be satisfied by relying solely on preliminary reports. Florida law requires a diligent investigation of the facts and claims presented. See *Berges*, 896 So. 2d at 672. The wrongful death lawsuits, with detailed negligence allegations, obligated Great West to look beyond the initial police report.

452, 456 (Fla. 1992) ("It is a cardinal rule of statutory interpretation that courts should avoid readings that would render part of a statute meaningless.")

Further, this argument cannot be reconciled Great West's own prior admissions. In its September 5, 2024 correspondence to its insureds, Great West stated that it was providing notice of potential excess exposure pursuant to its duty of good faith. See DE 38-3 at pp. 1. However, an insurer's duty of good faith to advise its insured of potential excess exposure arises only when exposure to an excess judgment becomes reasonably foreseeable—not when liability is believed to be absent. See *Boston Old Colony Ins. Co. v. Gutierrez,* 386 So. 2d 783, 785 (Fla. 1980) (rooting an insurers good faith obligation in ordinary care and prudence); *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 672 (Fla. 2004) (explaining that insurer's good faith duty includes diligent investigation and evaluation to avoid exposing insured to potential excess judgment). If, as Great West now contends, its investigation revealed no shred of fault on the part of its insureds, it had no duty to warn of excess exposure. As its own motion acknowledges, the existence of fault is a necessary condition for liability, and liability is the predicate for excess exposure. An insurer cannot, consistent with its good faith obligations, simultaneously advise its insured of potential excess exposure while claiming there was no evidence to suggest liability existed.

Great West's argument is thus internally inconsistent. On one hand, it claims that the wrongful death lawsuits did not trigger its statutory obligations because liability was nonexistent. On the other hand, it relies on those same claims to justify warning its insureds of potential excess exposure under its duty of good faith. These positions are mutually exclusive. Either Great West believed its insureds faced potential liability—thus triggering both its statutory obligations and its duty to warn—or it did not. Great West cannot assert both positions simultaneously.

In its opposition, Great West relies heavily on cases addressing an insurer's affirmative duty to initiate settlement negotiations under *Powell v. Prudential Prop. & Cas. Ins. Co.*, 584 So. 2d 12, 14 (Fla. 3d DCA 1991). In this context, Great West's reliance on uncertain liability to avoid its statutory options under § 624.155(6) is misplaced. There is no authority supporting Great West's assertion that liability must be "clear" before the 90-day clock begins. Even so, the Eleventh Circuit recently clarified that an insurer's affirmative duty to initiate settlement does not require liability to be certain or undisputed. Rather, it arises when liability is "reasonably obvious."

*Kinsale Ins. Co. v. Pride of St. Lucie Lodge*, 135 F.4th 961, 969-970 (11th Cir. 2025). There, the insurer attempted to justify inaction based on uncertain facts and conflicting reports, but the court rejected that argument, holding a jury could find the insurer breached its duty by relying on preliminary reports while ignoring the insured's obvious exposure and the catastrophic nature of the injuries.

The affirmative duty created in *Powell* and clarified in *Kinsale* is distinct from, and more demanding than, the statutory obligation under § 624.155(6). The common law duty to initiate settlement is a proactive, protective duty designed to shield insureds from excess judgments when liability becomes sufficiently apparent. By contrast, § 624.155(6), Fla. Stat., provides insurers with a procedural opportunity to avoid potential bad faith exposure, triggered simply upon notice of competing claims that "may exceed" policy limits, a far lower threshold that does not depend on clear or confirmed liability.

The issue before this Court is *not* whether Great West breached a common law duty to initiate settlement discussions with Claimants—a question that remains for another day—but whether Great West is barred as a matter of law from the safe harbor protections of Fla. Stat. § 624.155(6). Great West's own September 5, 2024 letter to its insureds, however, acknowledged potential exposure beyond the $2 million policy limits, confirming that it recognized liability sufficient to create a meaningful risk of an excess judgment. Whether this triggered a common law duty to initiate settlement under the "reasonably obvious" standard articulated in *Kinsale* remains a factual question. What is clear, though, is that this admission confirms the 90-day period under § 624.155(6) had begun no later than the date of that letter.

### *D. GREAT WEST CANNOT INVOKE STATUTORY SAFE HARBOR WHILE SHIELDING RELEVANT EVIDENCE*

Lastly, Great West argues that Defendant cannot rely on its September 5, 2024 letter to its insureds, claiming the letter is privileged and would not be subject to discovery in the absence of a separate bad faith claim. This argument misrepresents both the nature of the relief Great West seeks and the legal standard governing the evidence relevant to that relief.

By filing this interpleader action and invoking the statutory safe harbor protections of § 624.155(6), Great West has placed its claims handling conduct directly at issue. It seeks not merely to resolve competing claims, but to obtain a judicial declaration that it is immune from extracontractual liability, including any future bad faith claims, based on its compliance with the Fla. Stat. 624.155(6). [DE 1].

In seeking such relief, Great West has made its compliance with § 624.155(6), including the adequacy and timing of its claims handling, central to the resolution of this proceeding. Whether it received notice that claims may exceed policy limits and whether it acted within the statutory 90-day period are determinations essential to its requested discharge and immunity.

Under these circumstances, Great West cannot simultaneously claim entitlement to safe harbor protections while asserting privilege over documents directly relevant to whether it complied with the statute requirements for such protection. See *Allstate Indem. Co. v. Ruiz,* 899 So.2d 1121, 1125 (Fla. 2005) (holding that claim materials, including documents, memoranda, and letters, are discoverable in both first-party and third-party bad faith claims.) The letter to its insureds is not merely background correspondence; it is, accordingly to Great West, directly related to Great West fulfilling their duty of good faith to their insured to warn of potential excess exposure and the probability of the outcome of litigation. Having placed its claim handling at issue, Great West cannot shield critical evidence from the Court or from Defendant.

Fundamental principles of fairness preclude an insurer from invoking statutory immunity while denying the parties access to evidence necessary to evaluate that claim. To allow Great West to assert privilege over the letter, and potentially over other critical claims handling materials, would permit it to both assert and conceal the factual basis of its alleged compliance, effectively controlling the record in its favor.

Even if the letter were not subject to discovery due to privilege, which is disputed, Great West waived any such protection when it was shared with counsel in the underlying wrongful death case. § 90.507, Fla. Stat. Once waived, privilege cannot be reinvoked. *Portner v. Kopple,* 382 So.3d 742, 749 (Fla. 4th DCA 2024).

**Certificate of Service**

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF on July 21, 2025, which will provide a copy of the foregoing document to all counsel of record by CM/ECF and/or another means in accordance with the Federal Rules of Procedure.

By: /s/ Thomas Scolaro
Thomas Scolaro
Fla. Bar No. 178276
**SCOLARO LAW, P.A.**
1728 Coral Way, Suite 702
Miami, FL 33145
Tel: 305-424-2300
Fax: 305-424-2140
tom@usinjury.law
ana@usinjury.law
barbie@usinjury.law
***Attorneys for Defendant,***
***individually and as natural parent***
***and guardian of minors, S.B. and L.B.***

**SERVICE LIST**

Seth V Alhadeff
Fla. Bar No. 525235
Ravika R. Macdis
Fla. Bar No. 123659
Lorena M. Alfonso
Fla. Bar No. 1010903
Janice Lopez
Fla. Bar No. 1032538
**DINSMORE & SHOHL LLP**
200 S. Biscayne Boulevard
Suite 2401
Miami, FL 33131
Tel: 786-957-1136
Fax: 786-957-1158
Seth.Alhadeff@dinsrnore.com
Ravika.Rameshwar@dinsmore.com
lorena.Alfonso@dinsmore.com
***Attorneys for Plaintiff,***
***Great West Casualty Company***

Thomas Scolaro
Fla. Bar No. 178276
Maxwell Alexander Malvin
Fla. Bar No. 1052013
**SCOLARO LAW, P.A.**
1728 Coral Way, Suite 702
Miami, FL 33145
Tel: 305-424-2300
Fax: 305-424-2140
tom@usinjury.law
ana@usinjury.law
barbie@usinjury.law
***Attorneys for Defendant, Lawrencia Ferguson, individually and as natural parent and guardian of minors, S.B. and L.B.***

Catherine Cindric, Esq.
Florida Bar No. 112019
**Goldberg Segalla LLP**
500 S. Australian Ave., Suite 1000
West Palm Beach, FL 33401
Tel: (561) 618-4461 (Office)
ccindric@goldbergsegalla.com
rjanis@goldbergsegalla.com
ngiombetti@goldbergsegalla.com
***Attorneys for Defendant***
***Ryder Truck Rental Inc.***

Thomas J. Guilday, Esq.
Florida Bar No. 0180872
Sarah Finney Kjellin, Esq.
Florida Bar No. 0059126
**Guilday Law, P.A.**
1566 Village Square Boulevard
Tallahassee, Florida 32309
Telephone: 850-224-7091
tom@guildaylaw.com
sarah@guildaylaw.com
cindy@guildaylaw.com
ashlee@guildaylaw.com
***Attorneys for Defendant***
***Titus Carter***