IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 1:25-cv-20642-JB

GREAT WEST CASUALTY COMPANY,

Interpleader-Plaintiff, November 20, 2025
1:10 p.m.

vs.

NILDA MERALLA, as Personal, Representative of the Estate of Tyler Brian Escudero Ferguson; RODRICK ROLLE, as Personal Representative of the Estate of Sharon Ferguson; LAWRENCIA FERGUSON, individually and as natural parent and guardian of minors SB and LB; MAMO TRANSPORTATION, INC.; RYDER TRUCK RENTAL, INC.; and TITUS CARTER,

Interpleader-Defendants. Pages 1 THROUGH 38

---

TRANSCRIPT OF ZOOM MOTION HEARING
BEFORE THE HONORABLE JACQUELINE BECERRA
UNITED STATES DISTRICT JUDGE

Appearances:

FOR THE INTERPLEADER PLAINTIFF:
DINSMORE & SHOHL, LLP
SETH V. ALHADEFF, ESQ.
200 South Biscayne Boulevard, Suite 2401
Miami, Florida 33131

LEWIS BRISBOIS BISGAARD & SMITH, LLP
JANICE LOPEZ, ESQ.
Two Alhambra Plaza, Suite 1110
Coral Gables, Florida 33134

FOR THE ESTATE OF TYLER FERGUSON ESCUDERO:
DAVIS GOLDMAN, PLLC
AARON P. DAVIS, ESQ.
1221 Brickell Avenue, Suite 1860
Miami, Florida 33131

| | |
|---|---|
| FOR INTERPLEADER DEFENDANT LAWRENCIA FERGUSON: | SCOLARO LAW, PA<br>THOMAS B. SCOLARO, ESQ.<br>1728 Coral Way, Suite 702<br>Miami, Florida 33145 |
| | MALVIN LAW, LLC<br>MAXWELL A. MALVIN, ESQ.<br>201 St. Charles Avenue, Suite 2500<br>New Orleans, Louisiana 70170 |
| FOR THE ESTATE OF SHARON FERGUSON: | SEARCY DENNEY SCAROLA BARNHART & SHIPLEY<br>CLELL CALVIN WARRINER, III, ESQ.<br>2139 Palm Beach Lakes Boulevard<br>West Palm Beach, Florida 33402-3626 |
| FOR INTERPLEADER DEFENDANT RYDER TRUCK RENTAL: | GOLDBERG SEGALLA, LLP<br>CATHERINE H. CINDRIC, ESQ.<br>500 South Australian Avenue, Suite 1000<br>West Palm Beach, Florida 33401 |
| FOR INTERPLEADER DEFENDANT MAMO TRANSPORTATION: | LA CAVA JACOBSON & GOODIS<br>GREGORY S. GLASSER, ESQ.<br>9200 South Dadeland Boulevard, Suite 620<br>Miami, Florida 33156 |
| FOR INTERPLEADER DEFENDANT TITUS CARTER: | GUILDAY LAW, PA<br>SARAH F. KJELLIN, ESQ.<br>1556 Village Square Boulevard<br>Tallahassee, Florida 32309 |
| COURT REPORTER: | Yvette Hernandez<br>U.S. District Court<br>400 North Miami Avenue, Room 10-2<br>Miami, Florida 33128<br>yvette_hernandez@flsd.uscourts.gov |

(Call to order of the Court, 1:10 p.m.)

COURTROOM DEPUTY: United States District Court for the Southern District of Florida is now in session, the Honorable Jaqueline Becerra providing.

Case Number 25-cv-20642-Becerra, Great West Casualty Company v. Meralla, et al.

Counsel, please state your appearances for the record, beginning with the Plaintiffs.

MR. ALHADEFF: Seth Alhadeff on behalf of Great West Casualty Company, the Interpleader-Plaintiff.

MS. LOPEZ: Janice Lopez on behalf of Great West as well.

MR. DAVIS: Aaron Davis on behalf of the Estate of Tyler Ferguson Escudero.

MR. SCOLARO: Tom Scolaro and Max Malvin on behalf of Interpleader-Defendant Lawrencia Ferguson.

MR. WARRINER: Calvin Warriner on behalf of the Estate of Sharon Ferguson, Interpleader-Defendant.

MS. CINDRIC: Catherine Cindric on behalf of Interpleader-Defendant Ryder Truck Rental.

MR. GLASSER: Gregory Glasser on behalf of Interpleader-Defendant Mamo Transportation, Inc.

MS. KJELLIN: And Sarah Kjellin here on behalf of Interpleader-Defendant Titus Carter.

THE COURT: And who was here on behalf of the Estate

of Tyler Ferguson?

MR. DAVIS: I am, Your Honor. Aaron Davis on behalf of Tyler Ferguson.

THE COURT: All right. Good afternoon.

I hate having this hearing by Zoom. It's not convenient, at least for me. I always have my hearings in the courtroom. It's just my courtroom is being used and unavailable to me for the week, so I wanted to bring you in.

I've read the motions. I don't know who's taking the lead on behalf of the Defendants. As best I can tell, it's the same argument. Some of you make it in a more cursory fashion than others, because it's being made by the other Defendants. But I'd like to hear from each Defendant, or whoever wants to take lead on the argument, and then anybody can chime in one by one on their arguments. And then I'll hear from Great West.

I'm not ready to rule today. Sometimes I call you-all in because I'm ready to rule and I'm just ready to give an oral ruling. I'm not ready to do that today. This is not an issue I've had before, so I want to make sure that I'm really understanding the issues before we dive into it any further.

So I guess the first party to have filed a motion -- and this was styled as a motion to strike or for a definitive statement that was filed by Lawrencia Ferguson's estate. So I don't know if you want to take the lead in the argument or somebody else does.

UNIDENTIFIED SPEAKER: I believe Mr. Davis is going to take the lead.

MR. DAVIS: Your Honor, we were actually the last to file because we were served last, but if it's acceptable with Your Honor we would take the lead on the argument.

THE COURT: Yes. Absolutely.

MR. DAVIS: Okay. So this interpleader complaint was filed under the new interpleader legislation in Florida. That legislation requires that to seek an interpleader it be done under the Florida Rules of Civil Procedure, and that's 624.155(6)(a).

THE COURT: Wait. Sorry. Slow down. Give me the number again.

MR. DAVIS: Sure. 624.155, Section (6)(a).

THE COURT: Right. Got it.

MR. DAVIS: And I'll discuss that. That's one of our four arguments, and I'll try to make them brief. And if at any moment you want to stop me to address a question, I'm more than happy to do that. I'm not -- I don't have a script for this.

So the first argument on this, which is why it's not appropriate and essentially all interpleaders under the statute are filed in state court, here, the Court lacks subject matter jurisdiction because there's no minimal diversity under Statute 1335.

Great West filed their interpleader under Section

1335. In their interpleader, they actually suggest that Rule 22 -- Federal Rule 22 for interpleaders applies. But that's not the rule they're using to seek the interpleader. So the only question that we have before us today under Section 1335 is: Are the claimants to the funds, to the interpled funds, minimally diverse? A Rule 22 requires completive diversity.

So the claimants to the interpleader, right, the people that were injured in the accident or survivors of people who passed away, they're all Florida residents, all of them. The other defendants in the case are -- two of them are Georgia residents. I think one of them is a Florida resident. But they're not claimants to the money, so they're not claimants to the funds. They're necessary parties that don't actually have a cause of action pled against them.

THE COURT: Isn't their response to that there's diversity sort of in the classic sense because the insurance company is not a Florida company?

MR. DAVIS: No. Because that would still -- we would still have a complete diversity situation there under Rule 22. Yeah, it's correct that the insurance company is not a Florida company. But it would still require that a defendant -- under 1335, a defendant that is making a claim, a claimant on the funds, is a non-Florida resident. So that is for sure the rule. I cite to that in our motion, I believe, and I'll discuss that in one moment.

There was another argument that was made on these points about the citizenship of some of the personal representatives. I don't remember exactly which one is allegedly a non-Florida resident. It's the citizenship of the estate, not the personal representative. So all of the claimants to the funds are, in fact, Florida residents.

So again, 1335 requires one claimant of diverse citizenship from another claimant. That doesn't exist here. 1332 doesn't apply. And that only applies to a Rule 22 interpleader, which they are not seeking in this case.

Next, Florida Statute 624 --

THE COURT: Well, you're arguing -- and that would be dispositive.

MR. DAVIS: Yes. Yes, it would. I don't believe I need to go further, but I will in an abundance of caution.

THE COURT: No. No. I totally appreciate -- no. I want you to go further. I just want to make sure I'm clear. That's essentially -- I mean, it's not a remand. You're asking for dismissal on it. But essentially, you're saying: "Go to state court with this. We want to be in state court."

MR. DAVIS: Absolutely right, Your Honor.

Under Florida Statute 624.155, which is the interpleader statute that they are seeking to interplead under, not what they're alleging applies, you have 90 days after receiving notice of competing claims it may exceed the policy

limits to interplead under the Florida Rules of Civil Procedure. It's unique because in order to actually use the statute you have to use the Florida Rules of Civil Procedure. You have to file it in Florida court. That's the mechanism to use the substantive law. So it can't be here for that reason alone, and that's on top of the principal argument.

The next point that I'll make -- and I'm going to try to make this quick -- there was a letter that was attached to some of the motion filings in the interpleader, and we have incorporated that by reference. The letter was a September letter from 2024, a few months after the incident, where Great West Casualty acknowledged to its insured, Mamo Transportation, that there were, I believe, five claimants, and it was evident that the exposure for these claims exceeded the policy limits or may exceed the policy limits.

Now, you're talking about two deaths in a fiery crash, with up to five survivors, and several people with broken bones and burns in the back seat. It's a horrible crash, and they acknowledge it, rightfully so. What they've essentially done here is said: "Yeah, but that's standard practice, so that shouldn't be considered as some sort of evidence here, especially at the motion to dismiss stage, where extrinsic evidence isn't part of the Court's consideration."

We respectfully disagree. And there are two things that need to be raised in order for the Court to be able to

consider that, notwithstanding the two principal arguments that were made earlier. One is there has to be no dispute as to the authenticity of the letter. There isn't. Nobody has said that it's not an authentic letter. They would actually have to dispute the authenticity of it. And I'll remind the Court that when they sent that letter to their insureds about this horrible exposure, they then waited six months to file the interpleader in the wrong court.

Next, the claims -- the document has to be central to their claims. It is. That's the whole point of their claims. Great West said that they got notice on November 14th, 2024, and the action was timely filed within 90 days. Well, that's what the letter is about. They're basically using that letter, and then saying that that letter represents something that it doesn't. That's the whole point of how they're interpleading this case, is saying: "We didn't know until X date, but there's this document out there that forms the entire basis of when we knew that it was time to start the clock on a 90-day interpleader."

So we believe that that is clearly central to the case, and we cited -- we cited to a case called Price out of the Middle District on the exact issue. So that's that point.

And the final point, Your Honor, is the 90-day mark elapsed regardless of the letter. So notwithstanding the fact that they had six months after telling their insured: "Hey, we

only have two million in coverage. I hope you have excess for these five claimants that all burned and died," they then received our discovery responses. Our complaints were filed. Two wrongful death lawsuits had been filed, one of which was filed in the Complex Litigation Division in Miami, with $750,000 minimum jurisdictional requirements for amount in controversy. We provided our discovery responses, and they had damages information about what had happened in the crash. They would have had the homicide report, the traffic crash incident report, I believe, photos, autopsy pictures, whatever was publicly available, for many, many months.

So to come in here and say: "Hey, we didn't realize that we had this exposure until 90 days after you sent your demands however many months after this accident" -- six months, or five months, or whenever it was -- is disingenuous. And that is notwithstanding the jurisdictional defects that they have here, which are dispositive and can't be overlooked.

So that concludes the point, but I'm happy to answer any questions, Your Honor.

THE COURT: All right. I think I understand the diversity argument fine. I understand what the argument is on that.

On the second point -- again, if I am understanding you correctly -- walk through the dates for me on both your second argument and your third argument. Your second argument

is that the 90 days had to start from the letter. And clearly, they would have missed 90 days if you start from that letter, right, the letter they sent the insured. And then your third argument is, even if you don't count the letter, there was other notice before the 90 days; is that right?

MR. DAVIS: Right. My second argument was actually the Florida statute itself, which requires application of the Florida Rules of Civil Procedure. So that was separate from the diversity point because the statute that they bring the cause under requires a state court filing, not a federal court.

THE COURT: Got it. Sorry.

MR. DAVIS: That was sort of (1)(b) to the (1)(a) on diversity.

THE COURT: Right. So one is the diversity issue. The second is the issue you're traveling under the statute of state court anyway, there's no federal jurisdiction to it.

MR. DAVIS: Yes.

THE COURT: And then I've got the letter. And then your Fourth Amendment argument is, even if you don't have the letter, there's plenty of other evidence that put them on notice. Right?

But you're far afield on your third and fourth argument, right, because you don't -- we get nowhere near the third or fourth argument if they're traveling under the statute that they cite. Right?

MR. DAVIS: Right.

THE COURT: I got it.

MR. DAVIS: I do agree. I'm happy to elaborate on them, if you would like, but --

THE COURT: No. No. I just need to understand sort of intellectually where the buckets are. Right? If I agree with you on point 1, there's really no reason to go into point 2, 3, or 4 at all. It would be hard to disagree with you on 1, but then agree with you on 2, I think. I guess it's possible. I guess it's possible.

MR. DAVIS: Yeah. I don't think they are perfectly mutually exclusive. But yes, I understand what you're saying, Your Honor. And I don't disagree wholeheartedly. I understand what you --

THE COURT: Yeah. It's possible that they could come up with some argument on the first argument, but not on the second. But those seem to be pretty close. It's not a perfect Venn circle, one on top of the other, but there's tons of overlap in sort of the thinking of how you read the statute. If I get past all of that, then I'm really looking to see what created the notice. It's either the letter or it's not. Either way, you think they're past the 90 days.

MR. DAVIS: That's right.

THE COURT: All right. I understand.

Is there anybody -- I think all Defendants are making

similar arguments. I don't know if somebody else wants to chime in on behalf of any of the Defendants.

MR. WARRINER: Yes, Your Honor. I'll be extremely brief. Mr. Davis did a great job. And I think when you're looking at what constitutes notice, you have to look at the letter itself, where they say word for word: "This shall serve as notice to you of excess exposure," and that is the September 5th.

I don't think that anyone could look for better evidence of what constitutes notice than a certified letter from the head of Great West to their insured saying: "This serves as notice." And so that's my only point I'll make on points -- I'll call it 3 and 4 that Mr. Davis raised.

And if Your Honor wants a citation, that's in the first paragraph, third line from the bottom of the first paragraph.

THE COURT: Right. Okay. Anyone else?

MR. MALVIN: I have the last argument, Judge. And mine was the motion to strike. So if you get past Mr. Aaron's reason -- Mr. Davis's argument on jurisdiction, and considering the letter, and you decide that the interpleader is proper and should be here, I still think you need to strike the relief sought under the statute. And you have to get past all those first arguments first. But if you get to that point, then that's me.

And I don't think there's any disagreement that you consider extrinsic evidence under a motion to strike. That's fine. And it's also well established that you can strike relief that isn't available as a matter of law. I think the statute's clear on space that you have to file this within 90 days of two or more claims that may exceed the policy limits. You heard Mr. Davis's argument on that. So I would just say if you're going to consider the letter under the motion to strike, it's clear that their relief to be dismissed and to be absolved and have immunity for bad faith must be stricken.

THE COURT: The only issue I have with your argument from a procedural posture is I'd have to get through all these other arguments. And I don't know how I'd get through these arguments and still strike it. I mean, I think, at the end of the day, if I get through all of these arguments, I don't know how I strike it. And I don't know how I get through these arguments and not strike it.

Like, to me, it's just a different procedural vehicle that -- I don't quite understand how it would fit. Because if I strike that relief, what's the point of the interpleader?

MR. MALVIN: That's exactly the point.

THE COURT: Right. Right. So I don't really love that avenue because I don't understand what the point of the interpleader would be. I think I have to address Mr. Davis's arguments in the order that he addressed them. I think it's

sort of -- it's the most procedurally sound way of doing it.

MR. MALVIN: Agreed.

THE COURT: Okay. All right. Anyone else?

All right. Let me hear from Great West.

MR. ALHADEFF: Thanks, Your Honor.

Ms. Lopez is going to handle the procedural aspect, and I will address the more substantive arguments, if that's all right with Your Honor.

THE COURT: "The more substantive," as if procedure weren't substance.

Go ahead.

MR. ALHADEFF: I'm not good at it. So I call it less substantive. Okay?

THE COURT: All right.

I don't see her on my screen. Hold on.

I see her now.

Ms. Lopez?

MS. LOPEZ: So Section 624.155 does not divest this Court of subject matter jurisdiction. There is nothing in it that would suggest that it is limiting the authority of this Court to hear this case.

The crux of the Defendants' arguments really rely on 28 USC 1335. I think before getting to 1335 it's important to know, as you asked before, there is completive diversity in this case under 28 USC 1332.

Great West is a Nebraska entity. None of the Defendants are Nebraska entities. The amount in controversy is $2 million. That's undisputed. And Rule 22 is not a jurisdictional bar. It's a procedural mechanism. Subject matter jurisdiction is well pled in Paragraph 8 of the interpleader, where we invoke 28 USC 1332.

And then, turning to 28 USC 1335, as Mr. Davis argued, it does require minimal diversity. And all of the case law that all the parties cited, including Great West, explained that what's required under Section 1335 is minimal diversity. That is satisfied because the Defendants are Florida citizens, Georgia citizens, and Indiana citizens.

THE COURT: Right. But what to his point that it's not defendants, it's only parties that are claimants to the money?

MS. LOPEZ: Right. Adverse claimants. So they don't cite any case law actually supporting some kind of separation between truly adverse claimants versus claimants that aren't truly adverse.

THE COURT: But a claimant is different -- I'm sorry. But a claimant is different than a defendant, right? So if the language is "claimant," you would agree that some of these Defendants aren't claimants.

MS. LOPEZ: Well, the language of 1335 is: "Adverse claimants of diverse citizenship that are claiming or may claim

to be entitled to such money," and then goes on to say --

THE COURT: Right.

MS. LOPEZ: -- "any one or more of the benefits arising by virtue of any note, bond, certificate, policy, or other instrument."

THE COURT: Right. So would you concede that not all of these Defendants fall in that definition?

MS. LOPEZ: I don't concede that because all of the Defendants that were named were named because they all have either interest in or rights in the policy proceeds and how the proceeds are distributed, particularly if there is an excess judgment in the underlying litigation.

The insureds -- so Ryder, Mamo, and Titus Carter, all have concrete interest in how the funds are going to be disbursed or distributed because that's going to affect their exposure.

THE COURT: No. But that's different. So having an interest in the money is different than having an interest in the suit. So I could have an interest in what happens because depending on what happens that affects me. I'm interested, right, literally in the suit. But that doesn't mean I have an interest in the claim, which I think is what that language refers to. I mean, that's what I may be looking at.

But, to me, there's -- if the statute is using the word "claimant," it's not using "defendant," and it defines

claimant, having an interest in the funds is different than having an interest in the suit.

MS. LOPEZ: Well, it defines claimant as entitled to money or claiming the benefits arising out of a policy, which would be --

THE COURT: But how would they be claiming a benefit? How are those claimants -- how would you define them, then, the non-Florida?

MS. LOPEZ: The non-Florida entities -- so they're insureds under the policy, and they are entitled to indemnity, and they are the ones that would have a potential bad faith action against Great West.

THE COURT: Right. But that's not the two million. Right? You're right they have a bad faith interest. But we're talking -- this is an interpleader. So the issue is: What is their interest in the two million?

They don't have any interest. They can't possibly have an interest in the two million. They're the insured. They don't have an interest in the two million.

MS. LOPEZ: Not in receiving it, but in how it's distributed. It's going to affect their exposure.

THE COURT: Well -- right. But then can you connect that to the language of 1335?

MR. ALHADEFF: Judge, if I may.

THE COURT: No. No. No. You may not. She's doing

the argument.

MS. LOPEZ: I would connect it to a claim for a benefit arising out of a policy. The funds are a benefit arising out of the policy. And they don't receive it, but they would argue how it's distributed. And under 624.155, ultimately, the point is going to be how the funds are distributed via pro rata share.

THE COURT: Okay. So I'm going to give you one more chance here. I understand what your argument is. I understand why these folks have an interest in how this money is disbursed or if this money is disbursed at all. I understand that.

My question to you is: Is that the same as the language in 1335 that seems to read that what you have to do is -- not an interest in how it's distributed, but an interest in the actual interpleaded funds themselves. They have no interest in those funds. They certainly are interested in how they're distributed. Right? They're interested if they're distributed at all. I get all of that. But the question is: Do they have to have an interest in the actual funds themselves? Which, they clearly don't. So what is your argument as to that?

MS. LOPEZ: I understand that, but there's no case law that defines adverse claimants under the statute, at least none that I found and none that the Defendants have cited to.

THE COURT: No. I understand there might be no case

law, which is why we just look at what the statute says.

MS. LOPEZ: Right.

THE COURT: So that's why I'm looking at the language of the statute.

MS. LOPEZ: I mean, every -- every Defendant that is named here, we had to name here because they all are adverse to each other and they all have interest or rights --

THE COURT: Right. Okay. No one's arguing that they shouldn't have been named. The issue is they're here, they're named, they're properly named. Then the question becomes a question of jurisdiction, right, whether or not they are properly named in federal, as opposed to state court. It's then a jurisdictional issue. It's not a question that they shouldn't have been named. We're talking about 1335 and the jurisdictional element.

Go now to the 1332 argument with respect to their argument, the second argument they made that this matter really belongs in state court and should only be in state court.

MS. LOPEZ: There's complete diversity. The substantive statute that we are suing under is 624.155. And that is a substantive law, and that's the substantive law that applies, but the procedural mechanism for invoking subject matter jurisdiction is 28 USC 1332. There's complete diversity. The amount in controversy is satisfied.

THE COURT: Okay. You have any other argument, ma'am?

MS. LOPEZ: Not on procedure, Your Honor.

THE COURT: All right. Let me hear from you, Counsel, on the substance.

MR. ALHADEFF: Thank you, Your Honor.

To point out, as you did earlier, the issue here is whether the interpleader action survives. And if the interpleader action survives, it certainly affects all of the interpleader defendants. And it especially affects those who have an interest in the insurance policy. So they do have an interest in what occurs with these funds.

So not to reargue it, but there is -- the requirement that you were told about, it doesn't exist; that you need to have the claim to the funds. It also relates to the policy -- benefits to the policy -- I understand. But it does relate to where the funds -- they have an interest to where the funds are allocated because if Your Honor dismisses this action, and the funds aren't allocated, they have an interest in that. If Your Honor does move forward with the action, they have an interest in that as well. So I think it's a lot broader than what is being argued here.

THE COURT: It's not. You're sort of shifting the path, and I -- they made an argument looking at the language of 1335 and making a distinction with respect to jurisdiction as to who can be a claimant or not. I understand there is not a case one way or another, but you've got to address that

argument. If there's no -- if your argument is "defendant" means "claimant," and if you're properly in the suit, that's good enough to be a claimant. I hear you. That's your argument. Okay. But they have an argument to make. I mean, you're acting as if they're making it up. They're not. They're basing it on the language of the statute.

MR. ALHADEFF: But they're not reading the other part of the statute, which says: "Or interest in or benefit of the policy." They're ignoring that. They're saying it has -- they're not going through the "or."

So what I'm saying it all is subsumed under that "or" aspect, the second part of the statute. That's what I am saying. So I'm saying they're narrow -- they're reading the rest of the statute, which is something that I think also applies for the substantive argument.

THE COURT: I think they are, and that's the argument I had with Ms. Lopez -- or the question I had with Ms. Lopez. You know, the fact that you have an interest in a suit, is that sufficient? Is that really what the statutory language is referring to, as opposed to an interest or a benefit in the money? The big picture: "I have a benefit in this lawsuit," maybe that qualifies or doesn't, but I think that's the argument.

MR. ALHADEFF: I'd like to, if possible, do supplemental briefing, if you would allow, on this one issue,

based on what we discussed today -- if Your Honor would allow.

THE COURT: No. I mean, I'm going to look at the briefing. If I think I need supplemental briefing, I'll certainly ask for it. Don't get me wrong. But let me see if I need it. I don't need everybody to run through another around of briefing.

MR. ALHADEFF: Understood, Your Honor.

As it relates to the statute at issue here, 624, that we talked about, Subsection 6, ultimately, what it says is if two or more third-party claimants have competing claims arising out of a single occurrence, which in total may exceed the policy limits of one or more of the insured parties, an insurer is not liable beyond the available policy limits for failure to pay, if within 90 days after receiving notice of the competing claims in excess of the available policy limits the insurer files an interpleader action.

And the way that I'm reading the statute is plainly written. The insurer needs to receive notice from the claimants that they are seeking in excess of the policy limits.

THE COURT: Where does it say that? Where does it say that the notice has to come from the claimants?

MR. ALHADEFF: It doesn't. It says: "Receiving notice of the competing claims in excess of the policy limits."

What it does say is there needs to be notice that there are competing claims, numbers that exceed the policy

limits. Okay? And that didn't occur until November 17th, I believe, of 2024, when Mr. Davis made a phone call to Defense counsel demanding the $2 million. And then Mr. Davis followed up with a correspondence in January -- in fact, on January 20th. In the correspondence, at the end, it says: "Demand." And it says: "On November 14th, 2024" -- that's the date of the phone call -- "we demanded the $2 million policy limits in exchange for a confidential settlement." And so this deadline coincides with the 90 days from the November 14th, 2022 demand date.

So when we received -- so we went off of --

THE COURT: Was it the 14th or the 17th?

MR. ALHADEFF: We went off of the 14th, which is when the phone call was made. And the correspondence that I'm reading from is dated --

THE COURT: Right. Is dated --

MR. ALHADEFF: It's dated January 20th, 2025, where he's referencing the November 14th demand, and he's saying that the January 20th demand expires 90 days from the November 14th phone call.

So that was the first time we knew that there were competing -- notice of competing demands going to exceed the policy limits. And I say that because we know a complaint was filed by one of the --

THE COURT: Hold on. You're --

MR. ALHADEFF: Sorry.

THE COURT: Is your date the 14th or the January letter?

MR. ALHADEFF: The 14th, Your Honor.

THE COURT: The November 14th. Got it. Got it.

MR. ALHADEFF: Yeah. And we complied within the November 14th time frame. What's been produced -- and quite frankly, it's privileged -- is a document where the insurer Great West sent a letter to the -- its insured, which it's obligated to do, by the way, under case law -- saying: "Hey, this could trigger your excess policy. Notify your excess insurance." That was the purpose of the letter.

And that letter --

THE COURT: Why do you send that letter? You wouldn't -- do you send that letter in every case or do you only send it in cases where you believe the excess policy could be triggered? Because if you're only sending it where you believe there's going to be excess policy, then something must have triggered you sending the letter.

MR. ALHADEFF: Right. It's in the majority of cases, I believe. And now we're getting into substantive facts, which I don't believe would be appropriate for a motion to dismiss. I think what we're doing is -- it's a motion for summary judgment disguised as motion to dismiss.

However, I think it's without merit, because the

letter doesn't mean -- so what -- here's how I read the statute in its plain reading: Great West could tender its policy limits in an interpleader at any time before it gets this notice that there are competing claims, that when -- the claim is when there's a demand made for a certain amount of money. Okay? There's been no demand by the claimants that would exceed the policy limits. But once that comes in, once there's demands, right -- be it a complaint that says: "I want $2 million that's filed with the Court" -- once there are actual demands, that's when the 90 days begins to tick.

So in other words, the insurer doesn't have to wait to interplead funds. But if -- once there is clear notice that there are competing demands that exceed the policy limits, the clock starts. You then --

THE COURT: But the problem I'm having with your argument is that you're reading words in the statute that aren't there. Right? It doesn't say: "A demand." It doesn't say: "Clear notice." Right? You're reading kind of words that aren't in the statute.

And so you're right that this isn't summary judgment, but their argument is this letter is putting the insured on notice. It's kind of obvious. Why would you be putting your insured on notice of something that you didn't think existed? You're putting them on notice of excess liability.

MR. ALHADEFF: We're saying there's a possibility.

But that doesn't trigger the 90 days for the statute, is what I'm saying. The 90 days -- under the statute, it literally says: "90 days after receiving notice of the competing claims" --

THE COURT: Right.

MR. ALHADEFF: -- "in excess of the available policy limits" --

THE COURT: It doesn't say: "Notice of a demand." Right? It doesn't say: "Notice of suit."

MR. ALHADEFF: No. Right. No. A claim, though, under the dictionary definition, is a monetary demand. So the statute means that there needs to be someone making a claim for the policy limits. That wasn't happening. There is no claim prior to November 14th, 2024 that there's a demand being made or a claim being made for the policy limits -- that would exceed the policy limits. It's not there.

The whole purpose of the statute isn't to have a subjective: "Well, it could be it's this." There's nothing. No complaint said: "We want $2 million." That wasn't in there. There was no amount of money anywhere that would indicate a claim was being made to exceed the policy limits. That's why the statute's important. It's not to have a subjective intent to say we're now going to look at what the insurer knew. No. It's once it's established that the claim, which is a demand for money, exceeds the policy limits. That

didn't happen until November 14th -- which is a phone call, by the way. Okay? But we used that date, and we're within those 90 days.

To hold otherwise would be subjective and to potentially go into claims handling and say what you knew or should have known. That's not what the statute says. There has to be a claim, and the claim is a demand for money under all applicable definitions.

THE COURT: Again, that's not what the statute says. The statute doesn't say: "90 days from a claim." It says: "Notice of," right? It has to be 90 days from notice. That's different from 90 days from a claim. Right? I have to -- like, the word "notice" has to mean something.

MR. ALHADEFF: "Notice of a claim." It says: "Notice of a claim."

THE COURT: I know that. But what your argument is sounding to me like is it has to be 90 days from a claim, and the first time we got a claim was when Mr. Davis called.

"Notice of a claim." Right? I think these words have to mean something. And I think what they're arguing is clearly you are on notice of the claim at some date -- it doesn't matter which date -- at some date before you sent the insured the letter, because the point of the letter is to put its insured on notice of the excess claim. So otherwise, do you just -- I can't believe Great West is in the business of just

like randomly sending notices for no reason to its insureds.

MR. ALHADEFF: Well, if there's a possibility, okay, that the claim -- first of all, the claim has to be a demand for money. That was never made. Let's clear that up. A claim isn't that there's a lawsuit. Specifically, it's not that there's a lawsuit. A claim has to be a lawsuit plus demanding.

If the lawsuit demanded $2 million, that would constitute a claim. If you look at the definition of "claim," which we put in our papers, it's a demand for money. There was no demand equaling $2 million prior November 14th. Because the excess insurer says: "There's an accident. You need to put everyone on notice" -- right -- "of potential X, Y, and Z," that doesn't start the 90 days.

THE COURT: Well, I don't know that it does. I mean, that's what I have to decide, right?

MR. ALHADEFF: Right. But my point is that it's a notice of claim. And I understand -- I'm not ignoring notice. But notice of claim is notice of claim that there are competing requests for policy limits. There's nothing in writing that relates to that or anywhere even set. Right? So we understand there's lawsuits, and we understand -- but there's no demand or there's no monetary demand meeting or exceeding the two million.

Because we've seen the letter saying: "This could be an issue. Make sure you notify everybody," that doesn't

trigger the 90 days, is what I'm saying. In other words, Great West could have interpled the funds at that point in time, but the 90 days didn't start to run. The 90 days is safe harbor under the statute, and that's how it's read. It's not that you have -- I don't see that -- and nothing's been -- there is no dispute that prior to November 14th there was no monetary claim that would meet or exceed the policy limits.

THE COURT: The statute doesn't say 90 days from a monetary claim. The statute says: "Notice of competing claims." And you've got a letter where you put your own insured on notice of the excess exposure.

Like I said, I haven't made a decision yet what I'm going to do. But the problem I'm having with the arguments you're making is they don't seem to be tied to what the statute says.

MR. ALHADEFF: Under the statute, though, "claim" is monetary demand. And that's what is -- what I'm saying, that it doesn't get triggered until this monetary demand. Because otherwise we're looking at subjective issues. Because an insurer might think it could go up, that doesn't trigger the 90-day time. It just doesn't. It just means the insurer --

THE COURT: What's the provision number for that definition of claim, if you don't mind?

MR. ALHADEFF: So there is no definition of claim, but --

THE COURT: All right. So where do you get that "claim" equals monetary demand?

MR. ALHADEFF: The dictionary definition of "claim," as well as Florida case law that we've cited.

THE COURT: Right. But it's not the statute, is my point.

MR. ALHADEFF: No. But what I will point you to in the statute is earlier on in the statute, when it talks about policy demands as it relates to non-multiple parties and the requirement that it has, which is Section 4(a), it talks about needing evidence to support the amount of the claim.

So it does contemplate that when you have a claim there needs to be an amount. Right? And that's how it is read in the statute because the claims have to be in excess of the available policy limits. So it contemplates -- the definition of "claim" contemplates that there's an amount associated with it.

It's not a noticed claim, like under an insurance policy that when there's an incident or an occurrence you've got to notify your insurer under the policy in order to comply with the notice provisions. Notice, as contemplated by the statute, incorporates an occurrence plus damages.

And if it's not defined in the statute, as we know, we go to the dictionary term of it. And the dictionary term indicates claim for money. And in the statute itself, I told

you, under 4(a) it mentions evidence for the amount of the claim, which indicates to me that it contemplates that claims should have a monetary amount associated with it.

THE COURT: I don't think that that's the dispute. We're not disputing whether the claim had a monetary amount or not. We're talking about a claim to an insurance policy, which, by definition, of course, has to be for money. So I don't think I'm going to get tripped up with this idea that the claim was for money or not for money. Of course it's -- I mean, in this context, that definition, of course, it's a claim for money.

I think the issue is the statute asks for -- or defines it as the notice of competing claims. The question there for both the third and fourth argument that they make is: What constitutes notice of a competing claim? Right?

MR. ALHADEFF: In excess of the available policy limits. And notice of that is when monetary demand in excess of the policy limits is made. I mean, it's clear as day. I don't believe that the Florida Legislature intended to have a provision where it's that subjective to protect one from bad faith. I think that it's clear that we've got --

THE COURT: Your argument would suggest that the insurance company could have done its own review, known this was -- I'm making stuff up now just for purposes of the argument, right? The insurance company is sitting there. It

knows it's got a $5 million liability on its hands. It's speaking to its insured, obviously, about that. It knows the exposure is going to be in excess of it, but it doesn't benefit from the 90-day safe harbor until the third party makes some sort of written or oral demand on the insurance company.

That's when you're -- before then, even though your insured is on -- you've put your insured on notice, you know there's going to be an excess claim -- this is all the stuff we talk about when we talk about bad faith, but this safe harbor doesn't click in until there's some demand made of the insured or the insurance company.

MR. ALHADEFF: So there's no indication or any allegation that we knew it was an excess claim. We're saying it's a possibility. So I disagree. I think that the facts you gave were different. Here, the letter says there's a possibility, let the excess folks know. It's putting them on notice --

THE COURT: Okay. But let -- no. No, sir. No, sir. Because we have to be -- I mean, under that logic, you never know what a claim is worth until you have a verdict. Right? I mean, under that logic, that completely sort of eats all this up. Right? I don't think an insurance company can sit back and say: "Well, we didn't know. We had no idea because there's no judgment," I mean, or because there's no letter that says it's over six million or seven million.

Under your logic, an insurance company could have known, and known internally, and taken the position even with its insured that for sure this is an excess policy. And I think your answer to my question has to be correct, that this is a statute that creates a safe haven and your 90 days don't start ticking until have the notice of the competing claims.

MR. ALHADEFF: That's what my position is. Yes.

THE COURT: Yeah. I think that is our position. That even if you thought that there was going to be an excess in the competing claims, even if you had absolutely determined that, it doesn't matter. You get safe haven 90 days from the notice of it.

MR. ALHADEFF: That's correct.

THE COURT: I don't think you can argue anything else. Right? Because otherwise, why were you sending that letter? Clearly, you sent that letter because you thought -- somebody at the insurance company had made the determination that excess exposure here was likely, and that's why you --

MR. ALHADEFF: I disagree with you saying --

THE COURT: Or existed.

MR. ALHADEFF: It says: "Possible" and "potential."

THE COURT: "Possible." Right. I think your argument has to be that's -- that the letter is irrelevant. That what triggers is notice of competing claims.

MR. ALHADEFF: A hundred percent that's my argument.

Yes.

THE COURT: Got it. Okay.

MR. DAVIS: Your Honor, I would like to --

THE COURT: No. Hold on. No. No. Mr. Davis, I'm not done. Give me a minute.

Okay. Now you jumped -- Mr. Alhadeff is off my screen now.

Do you have anything further that you want to argue on behalf of Great West?

MR. ALHADEFF: I'm going to rest on whatever is in our papers, Your Honor, in addition to what you and I discussed, I'll say, and I appreciate. If you have any other questions, I'm happy to address them.

THE COURT: Right. No. I don't know how I'm going to rule, but I understand the issues much better than I did from reading the pleadings.

Mr. Davis, you have one minute because I have a two o'clock, and I still haven't had lunch. So you have one minute.

MR. DAVIS: I don't even need the minute. So I just wanted to correct a couple things for the record. The letter we've been referring to, it actually refers to all the Plaintiffs in the case as claimants. So that is how they are labeled in the letter. For the competing claims, they are claimants, verbatim.

Also, there was this suggestion that there, like, may be some potential possible -- what they have told their insurer is that it has become evident -- evident -- that the potential for an excess exposure does exist in this matter and the coverage provided by Great West may be insufficient for the claims that are being pursued, all five, quote/unquote, claims. That's all you need, is that "exposure may exceed."

So they've almost -- they've almost tracked the statute in their own letter to their carrier, only to then say: "You need to have a demand," which would allow them to interplead the funds right before trial. If they didn't get a demand until before trial, then they would just say: "You know what? We'll interplead and everybody can fight about it, even though we knew the whole time the exposure exceeded the policy limits."

THE COURT: Well, that's your co-counsel's argument, that even if I disagree with you on all of this, at the very least, what you shouldn't allow them to have is the bad faith safe haven. Right?

"Let them" -- "Okay. If you disagree with us, Judge, let them interplead the funds, but don't give them that." Right? That, I don't think I can procedurally get to, but I understand why that argument's being made.

No. We're good. I understand the arguments. I really don't know yet how I'm going to rule. This was really

beneficial. I like having oral arguments. It's how I think; by talking. And usually the lawyers know more about the cases than I do or my clerks can. So I like talking to lawyers and sort of noodling it out with the lawyers. Don't take any questions that I had today as an indication of one or the other. I really am kind of noodling all the issues with you in these hearings. And hopefully, it will help me -- and I think it will -- get to the right decision.

If, in doing more research, and sort of getting further into the case, I think I need supplemental briefing on any issue, I'm not shy about doing that, and I'll ask for it on any particular point that I think might need clarification. All right?

I appreciate everybody's time today. I apologize this had to be on Zoom. I hate these Zoom hearings. But I was able to get it done irrespective of not having a chambers. So we're in recess and Happy Thanksgiving to everybody.

MR. ALHADEFF: Happy Thanksgiving.

(Proceedings concluded at 2:00 p.m.)

UNITED STATES OF AMERICA )
ss:
SOUTHERN DISTRICT OF FLORIDA )

C E R T I F I C A T E

I, Yvette Hernandez, Certified Shorthand Reporter in and for the United States District Court for the Southern District of Florida, do hereby certify that I was present at, and reported in machine shorthand, the proceedings had the 20th day of November, 2025, in the above-mentioned court; and that the foregoing transcript is a true, correct, and complete transcript of my stenographic notes.

I further certify that this transcript contains pages 1 - 38.

IN WITNESS WHEREOF, I have hereunto set my hand at Miami, Florida, this 15th day of January, 2026.

/s/Yvette Hernandez

Yvette Hernandez, CSR, RPR, CLR, CRR, RMR
400 North Miami Avenue, 10-2
Miami, Florida 33128
(305) 523-5698
yvette_hernandez@flsd.uscourts.gov