## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 25-cv-20642-JB/Torres

GREAT WEST CASUALTY COMPANY,

      Interpleader Plaintiff,

v.

NILDA MERALLA, as Personal Representative
of the Estate of T.F., *et al.*,

      Interpleader Defendants.

_____/

### OMNIBUS ORDER ON MOTIONS TO DISMISS AND MOTION TO STRIKE

**THIS CAUSE** comes before the Court on the following motions: (1) Interpleader Defendant Lawrencia Ferguson's Motion to Strike Requests for Discharge and Injunctive Relief, or in the Alternative, for a More Definite Statement as to Paragraph 22; (2) Interpleader Defendant Rodrick Rolle's Motion to Dismiss All Claims for Relief Pursuant to Section 624.155(6)(a), Florida Statutes; and (3) Interpleader Defendant Nilda Meralla, as Personal Representative of the Estate of T.F.'s, Motion to Dismiss.  ECF Nos. [38], [39], [58].  Interpleader Defendant Mamo Transportation Inc. filed a Notice of Joinder With Co-Defendants' Motions to Dismiss.  ECF No. [78].  Interpleader Plaintiff Great West Casualty Company filed Responses in Opposition to each of the Motions, and the movants filed Replies.  ECF Nos. [46], [47], [51], [66], [75], [76], [80].  Great West also filed a Notice of Filing certain documents in support of its Oppositions to the Motions.  ECF No. [81].  On November 20, 2025, the Court heard oral argument on the Motions.  ECF No.  [82].

1

Upon careful consideration of the parties' written submissions and argument of counsel, the pertinent portions of the record, and the relevant authorities, for the reasons explained below, it is hereby **ORDERED AND ADJUDGED** that the Motions are **GRANTED** and the Complaint is dismissed with leave to amend.

## I.    BACKGROUND

This interpleader action arises out of a tragic car accident involving Great West's insured, Mamo Transportation.  Great West issued a Commercial Lines Policy and a Commercial Excess Insurance Policy to Mamo Transportation, which together provide liability limits of $2,000,000.00 (the "Policy Limits").  ECF No. [1] ¶¶ 11–12. In this action, Great West seeks to interplead those funds into the Court registry in compliance with Florida Statutes section 624.155(6), a recently enacted provision that provides insurers, under certain circumstances, with a safe harbor from subsequent bad faith lawsuits.  Great West's compliance—or lack thereof—with the requirements of Section 624.155(6) is the core question at issue in the instant Motions.

Section 624.155(6) states in pertinent part:

> If two or more third-party claimants have competing claims arising out of a single occurrence, which in total may exceed the available policy limits of one or more of the insured parties who may be liable to the third-party claimants, an insurer is not liable beyond the available policy limits for failure to pay all or any portion of the available policy limits to one or more of the third-party claimants if, within 90 days after receiving notice of the competing claims in excess of the available policy limits, the insurer complies with either paragraph (a) or paragraph (b):
>
> (a) The insurer files an interpleader action under the Florida Rules of Civil Procedure. If the claims of the competing third-party claimants are found to be in excess of the policy limits,

> the third-party claimants are entitled to a prorated share of the policy limits as determined by the trier of fact. An insurer's interpleader action does not alter or amend the insurer's obligation to defend its insured.
>
> . . . .

Fla. Stat. § 624.155(6)(a).  Interpleader Defendants assert that Great West failed to comply with the statute's 90-day deadline to file its interpleader action.

A. <u>The Accident</u>

On April 24, 2024, a motor vehicle accident occurred involving Sharon Ferguson and Titus Carter, a permissive user and authorized driver of Mamo Transportation who contracted with Ryder Truck Rental for purposes of transporting a Ryder-owned tractor.  ECF No. [1] ¶ 13.  According to the Florida Traffic Crash Report,[1] Ms. Ferguson's vehicle "for unknown reasons, veered to the right" which caused her vehicle's "right rear to collide with the front left" of Mr. Carter's vehicle.  ECF No. [1-3] at 4.  The effects of the collision were grave.  According to the Crash Report, Ms. Ferguson's vehicle "left the roadway . . . its front collided with a tree . . . [and] [t]he vehicle became fully engulfed in flames."  *Id*.  Ms. Ferguson and her minor son, T.F., who was the front seat passenger, were pronounced deceased on the scene.  *Id*.  The three backseat passengers, Lawrencia Ferguson and her two minor children, were taken to the hospital with serious injuries.  *Id*.  Specifically, the Crash Report classified the injuries of Ms. Ferguson and her children as "incapacitating."  *Id*. at 3–4.  The Crash Report noted that Mr. Carter did not have severe injuries.  *Id*. at 4.

---

[1] The Crash Report is attached to the Complaint as Exhibit C.  ECF No. [1-3].

The Crash Report further noted Sharon Ferguson to have "other contributing action" at the time of the crash, while Mr. Carter was noted to have "no contributing action." *Id*. at 3–4.

### B. The Subsequent Lawsuits

On June 5, 2024, the Estate of Sharon Ferguson filed a lawsuit against Mamo, Mr. Carter, and Ryder Truck Rental in Florida Circuit Court seeking "damages in excess of $50,000.00 exclusive of attorney's fees and costs," ECF No. [81] at 34, which is the minimum jurisdictional amount required to file an action in Florida Circuit Court. *See* Fla. Stat. § 34.01(1)(c). A few days later, on June 10, 2024, the Estate of T.F. filed a lawsuit in Florida Circuit Court against the foregoing defendants, as well as against the Estate of Sharon Ferguson, seeking $750,000.00, which is the minimum jurisdictional threshold for the Complex Business Litigation division. ECF N. [81] at 13–30. On January 27, 2025, Lawrencia Ferguson, individually and as the natural parent and guardian of her two minor children, filed a lawsuit against the foregoing parties in Florida Circuit Court seeking $750.000.00. *Id*. at 54–101.

### C. Great West Notifies Mamo and Mr. Carter of the Possibility of an Excess Judgment

On September 5, 2024, nearly three months after Sharon's Estate and T.F.'s Estate filed their respective lawsuits, but before Lawrencia Ferguson filed her action, Great West sent a letter to Mamo and Mr. Carter regarding the accident (the "September 2024 Letter").[2] ECF No. [39] at 10–11. For purposes of the instant Motions, the September 2024 Letter states in relevant part:

---

[2] The September 2024 Letter is attached to the Motion to Dismiss filed by Sharon's

> As you are aware, a commercial auto being operated under the
> authority of Mamo Transportation Inc. was involved in an
> accident that occurred on April 24, 2024, on Interstate 75
> southbound in Marion County, Florida.  The accident caused the
> deaths of two individuals, Sharon Ferguson, age 49, and her
> fifteen (15) year old son, [T.F.].  Three other occupants of the
> claimant vehicle were also injured.  The purpose of this letter is
> to advise you that *based on our investigation to date*, it has become
> evident that the *potential for an excess exposure* does exist in this
> matter and the coverage provided by Great West Casualty
> Company ("Great West") *may be* insufficient for the *claims that
> are being pursued in this matter*.  The damages resulting from
> this loss *may have* a value in excess of the policy limits of
> insurance provided to you by Great West.   Based upon the
> *potential damages* and exposure presented by this loss, this shall
> serve as *notice to you of an excess exposure*.  As your insurer, we
> have a duty to advise you of settlement opportunities, to advise
> you as to the probable outcome of the matter and/or litigation, and
> to warn you of the *possibility of an excess judgment* and any steps
> you might take to avoid the same.

ECF No. [39] at 10 (emphasis added).

On November 14, 2024, the attorney for T.F.'s Estate contacted defense counsel for Mamo and Mr. Carter by telephone to discuss settlement.   ECF No. [47]. According to the Complaint, this telephone discussion is when "Great West first received notice that the Claimants' claims may be in excess of the total $2,000,000 [Policy limits]."  ECF No. [1] ¶ 17.  A few months later, on January 20, 2025, Great West received a confidential written demand for the Policy Limits from T.F.'s Estate, which referenced their earlier settlement communication.  ECF No. [47] at 5.  One

---

Estate; it is not attached to the Complaint.  Great West argues that the Court cannot consider the September 24, 2024 Letter because, at the motion to dismiss stage, the Court is confined to the four corners of the Complaint.  ECF No. [66] at 8.  However, as explained *infra*, the September 2024 Letter falls within an exception to this rule and, as such, is appropriate for the Court's consideration in evaluating the instant Motions.

week later, on January 27, 2025, counsel for Lawrencia Ferguson issued a written demand to Great West for the Policy Limits. ECF No. [47-1]. Sharon's Estate did not serve a separate written demand on Great West apart from the lawsuit it filed months earlier.

     D. <u>This Action and the Instant Motions</u>

On February 12, 2025, Great West filed its Complaint for Interpleader. ECF No. [1]. In the Complaint, Great West alleges that interpleader is appropriate "pursuant to Section 624.155(6)(a), Fla. Stat., and Fla. R. Civ. P. 1.240" and requests that the Court enter an Order:

    a)    Determining that Interpleader is appropriate in this matter;

    b)    Authorizing GREAT WEST CASUALTY COMPANY to pay into the registry of the Court the $1,000,000 of limits available under the Policy and the $1,000,000 of limits available under the Excess Policy;

    c)    Providing that GREAT WEST CASUALTY COMPANY be discharged from all liability to all interested parties of the $1,000,000 of limits available under the Policy and the $1,000,000 of limits available under the Excess Policy;

    d)    Determining the prorated share of the $1,000,000 of limits available under the Policy and the $1,000,000 of limits available under the Excess Policy to be divided amongst the Claimants;

    e)    Requiring the Claimants to interplead and litigate between themselves their respective rights to the $1,000,000 of limits available under the Policy and the $1,000,000 of limits available under the Excess Policy;

    [and]

    f)    Providing that, pursuant to Section 624.155(6), Fla. Stat., all interested parties subject to this action be restrained

> and estopped from initiating any action against GREAT
> WEST CASUALTY COMPANY for recovery of the
> $1,000,000 of limits available under the Policy and the
> $1,000,000 of limits available under the Excess Policy
> and any amounts in excess of such policy limits which the
> trier of fact may find the competing third-party claimants
> are entitled to in this action

*Id.* ¶ 23, at pp. 4–5.  Great West further alleges that it "commenced this Interpleader action within ninety (90) days of having received notice of the competing claims in excess of the available policy limits. *See* § 624.155(6), Fla. Stat." *Id.* ¶ 22.  This allegation repeats the relevant language from Section 624.155(6).

The proper interpretation of Section 624.155(6) is at the heart of the parties' dispute.  In particular, Interpleader Defendant Roderick Rolle, as Personal Representative of Sharon's Estate, filed a Motion to Dismiss arguing that the Court should "dismiss with prejudice all claims or requests for relief . . . based on Section 624.155(6)(a) as legally unsupported and time-barred" because "Great West communicated its own acknowledgment of excess exposure on September 5, 2024" and filed this action "160 days later, rendering the safe harbor provisions contained in Fl[a]. Stat. 624.155 time barred."  ECF No. [39] at 4–5.  Interpleader Defendant Nilda Meralla, as Personal Representative of T.F.'s Estate, filed a Motion to Dismiss raising the same argument.  ECF No. [58] at 4–7.

Interpleader Defendant Lawrencia Ferguson filed a Motion to Strike Requests for Discharge and Injunctive Relief, or in the Alternative, for a More Definite Statement as to Paragraph 22 of the Complaint, making a similar argument.   ECF No. [38].  Lawrencia Ferguson argues that the Court should strike Great West's request for discharge and an injunction protecting it from further liability pursuant

to § 624.155(6) because "[Great West] did not initiate this interpleader action until February 12, 2025—a full 306 days after the collision, 247 days after the Estates of [T.F.] and Sharon Ferguson filed their wrongful death lawsuits, and 160 days after it formally advised its insureds of the risk of an excess judgment—placing its filing well beyond the statutory 90-day safe harbor." *Id.* at 4. In the alternative, Lawrencia Ferguson seeks a more definitive statement regarding Great West's receipt of notice because the relevant allegations of the Complaint (i.e., ¶¶ 17, 22) are "vague, conclusory, and devoid of supporting factual detail[.]" *Id.* at 4–5.[3]

Finally, T.F.'s Estate makes an additional argument in support of dismissal, namely that the Court lacks subject matter jurisdiction. T.F.'s Estate argues that "Great West's complaint exclusively relies on 28 U.S.C. § 1335 to invoke this Court's jurisdiction," which requires diversity of citizenship between two or more claimants. ECF No. [58] at 7–8. Yet, Great West has failed to allege that a claimant to the funds at issue is a citizen of a state other than Florida. *Id.*

Great West opposed the Motions and argues that its lawsuit is timely because it did not receive notice of "competing claims" within the meaning of Section 624.155(6) until it received competing demands for payment under the Policy, which occurred on January 27, 2025 when it received the written demand from Lawrencia Ferguson's counsel which followed the verbal and written demand from counsel for T.F.'s Estate on November 14, 2024 and January 20, 2025, respectively. ECF Nos.

---

[3] As mentioned, Interpleader Defendant Mamo Transportation Inc. filed a Notice of Joinder With Co-Defendants' Motions to Dismiss. ECF No. [78].

[46] at 9–14; [47] at 9–14; [66] at 11–14.  According to Great West, the earlier lawsuits against Mamo and Mr. Carter do not constitute notice of competing claims as contemplated by Section 624.155(6) because they "were inconsistent with Great West's investigation and did not, on their face, establish that claims would exceed the available $2 million in coverage."  ECF No. [46] at 18–19.  Great West further argues that the September 2024 Letter should not be considered at this stage of the proceedings but, even if it is, the September 2024 Letter does not constitute notice of competing claims within the meaning of the statute for four reasons: (1) theoretical exposure does not suffice as notice of competing claims in excess of available policy limits, (2) Great West had not received sufficient evidence to support the amounts demanded, (3) the letter fulfilled the insurer's obligation to warn of the possibility of an excess judgment and, as such, was not an admission that it received notice of competing claims within the meaning of Section 624.155(6), and (4) it would be inequitable to use a confidential advisory letter drafted in furtherance of the insurer's good faith duties as the trigger for statutory deadlines under Section 624.155(6).  ECF Nos. [46] at 14–20; [47] at 14–20; [66] at 14–20.

With respect to subject matter jurisdiction, Great West argues that the requirements of minimal diversity under 28 U.S.C. § 1335 are met because claimants Mamo, Ryder Truck Rental, and Mr. Carter are not citizens of Florida and, thus, are diverse from claimants Meralla, Rolle, and Lawrencia Ferguson who are citizens of Florida.  ECF No. [66] at 5–6.  Great West also argues that an independent basis for subject matter jurisdiction exists, namely traditional diversity jurisdiction under 28

U.S.C. § 1332 and Federal Rule of Civil Procedure 22, because there is complete diversity between the stakeholder (Great West) and all Defendants, and the amount in controversy exceeds $75,000.00.  *Id.* at 6–7.

## II.    ANALYSIS

The Court begins, as it must, with the question of its subject matter jurisdiction.   "In federal courts, there are two interpleader remedies: "statutory interpleader under [28 U.S.C. § ] 1335 and traditional equitable interpleader governed by Rule 22 [of the Federal Rules of Civil Procedure]."  *Ohio Nat. Life Assur. Corp. v. Langkau ex rel.*, 353 F. App'x 244, 249 (11th Cir.  2009) (citation omitted). The Complaint invokes both forms of interpleader.  *See* ECF No. [1] ¶ 10 ("This Interpleader action is brought pursuant to 28 U.S.C §1335, Section 624.155(6)(a), Fla. Stat., and the Federal Rules of Civil Procedure, and is for the sum of $2,000,000, which is within the jurisdictional amounts of this Court.").

Section 1335 provides in pertinent part that "[t]he district courts shall have original jurisdiction of any civil action of interpleader . . . if  . . . [t]wo or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property . . . ."  28 U.S.C. § 1335.  This is known as "minimal diversity," whereby at least two of the adverse claimants to the interpleaded funds must be of diverse citizenship, which is "necessary to invoke subject matter jurisdiction under § 1335."  *Symetra Life Ins. Co. v. Fitzpatrick*, No. 5:09-cv-355, 2009 WL 3710691, at * 1 (M.D. Fla. Nov. 5, 2009); *see*

*also Great Lakes Ins. SE v. Dunklin*, 510 F. Supp. 3d 1091, 1092 (S.D. Ala. 2021) (citations omitted).

The Estate of T.F. argues that minimal diversity is absent because the adverse claimants, specifically the decedents as well as Lawrencia Ferguson and her minor children, are all citizens of Florida.  *See* ECF No. [58] at 8.  Great West does not dispute the citizenship of these parties.  Rather, Great West argues that Mamo and Mr. Carter are also adverse claimants because their "interests in the Policy are not aligned" and, as the Complaint alleges, they are each citizens of a state other than Florida (Mamo is a citizen of Indiana and Mr. Carter is a citizen of Georgia) such that minimal diversity exists.  ECF Nos. [1] ¶¶ 5, 7; [66] at 6.

The Court is not persuaded that Mamo and Mr. Carter are properly classified as adverse claimants within the meaning of § 1335.  The statute refers to the diverse citizenship of adverse claimants who "are claiming or may claim to be entitled to" the interpleaded funds.  28 U.S.C. § 1335(a)(1).  The Complaint does not allege, nor does Great West argue in its Response, that Mamo and Mr. Carter are "claimants" or have made or may make a claim to the interpleaded funds.  Rather, the Complaint specifically defines the term "Claimants" to mean the Personal Representatives of T.F.'s Estate and Ms. Ferguson's Estate, as well Lawrencia Ferguson individually and on behalf of her minor children.  ECF No. [1] ¶ 16.  Indeed, these are the only parties identified in the Complaint (and argued in the Response) as having made a claim against the Policy Limits, which are the funds that Great West seeks to interplead.  Accordingly, the Court concludes that the "adverse claimants" within the

meaning of § 1335 are T.F.'s Estate, Ms. Ferguson's Estate, Lawrencia Ferguson and her minor children, all of whom are citizens of Florida. *See* ECF Nos. [1] ¶¶ 2–4; [58] at 8. As such, this Court's subject matter jurisdiction cannot be based on statutory interpleader under § 1335 because minimal diversity is absent. *See e.g., Great Lakes Ins. SE*, 510 F. Supp. 3d at 1093; *McKerchie v. South First Manor, LLC*, No. 07-cv-61365, 2008 WL 2262048, at * 3 (S.D. Fla. May 30, 2008) (dismissing statutory interpleader action for lack of subject jurisdiction because adverse claimants were all citizens of Florida "which destroys the minimum diversity requirement of the interpleader statute").

This conclusion, however, does not end the Court's inquiry. As mentioned, Rule 22 of the Federal Rules of Civil Procedure provides an additional basis for interpleader. The Court has subject matter jurisdiction over such a "rule interpleader" action if the requirements of diversity jurisdiction under 28 U.S.C. § 1332 are satisfied. *See e.g., Ohio Nat. Life Assur. Corp.*, 353 F. App'x at 249 ("Relevant to this appeal, Rule 22 requires complete diversity between the stakeholder and the claimants."). Pursuant to § 1332, federal courts have diversity jurisdiction over civil actions between citizens of different states or foreign countries where the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. There is no dispute that the requirements of § 1332 are satisfied, as the amount in controversy far exceeds the $75,000 threshold and complete diversity exists given that Great West, the stakeholder, is a citizen of a different state (Nebraska) than any of the Interpleader Defendants. ECF No. [1] ¶¶ 1–7.

12

The Court recognizes that the Complaint does not specifically refer to Rule 22. However, the Complaint does explicitly allege that jurisdiction is proper under § 1332, and further alleges that this action "is brought pursuant to . . . the Federal Rules of Civil Procedure . . . ."  ECF No. [1] ¶¶ 8, 10.   This is sufficient, as an interpleader plaintiff does not have to refer to Rule 22 in order for the Court to conclude that diversity jurisdiction exists under § 1332.[4]  *See Gold-Fogel v. Fogel*, 16 F.4th 790, 799 n.10 (11th Cir. 2021) (plaintiff established federal jurisdiction under § 1332 for interpleader action even though "[t]he complaint did not refer to Rule 22, which governs the interpleader procedure," where the "interpleader complaint expressly invoked federal diversity jurisdiction under 28 U.S.C. § 1332."). Accordingly, given that complete diversity exists and the amount in controversy requirement is satisfied, the Court concludes that it has subject matter jurisdiction over this action under § 1332.  *See e.g., Great Lakes Ins. SE*, 510 F. Supp. 3d at 1096.

---

[4] At the Hearing, defense counsel asserted that Great West cannot rely upon Rule 22 because an interpleader action brought pursuant to Section 624.155(6) is one filed under the Florida Rules of Civil Procedure. *See* Fla. Stat. § 624.155(6)(a) (protecting insurer from subsequent bad faith lawsuits "if, within 90 days after receiving notice of the competing claims in excess of the available policy limits, the insurer complies with either paragraph (a) or paragraph (b):  (a) The insurer *files an interpleader action under the Florida Rules of Civil Procedure*.") (emphasis supplied).  As an initial matter, this issue was not briefed by the parties.  However, the Court cannot find any support in the statute for the proposition that it prohibits an interpleader action under the Federal Rules of Civil Procedure or otherwise vests jurisdiction over such actions exclusively in Florida state courts.

A. **The Parties' Dispute Centers on the Timeliness of This Action Under Section 624.155(6).**

Having determined that it has subject matter jurisdiction, the Court proceeds to consider the merits of the parties' arguments as to dismissal. As mentioned, the Interpleader Defendants argue that this action should be dismissed because Great West failed to file its Complaint within the 90-day deadline set forth in Section 624.155(6) and, thus, it is not entitled to the protections provided by the statute. Section 624.155(6) states in pertinent part that "[i]f two or more third-party claimants have *competing claims arising out of a single occurrence, which in total may exceed the available policy limits* of one or more of the insured parties who may be liable to the third-party claimants, an insurer is not liable beyond the available policy limits for failure to pay all or any portion of the available policy limits to one or more of the third-party claimants if, *within 90 days after receiving notice of the competing claims in excess of the available policy limits*, the insurer complies with either paragraph (a) or paragraph (b) . . . ." Fla. Stat. § 624.155(6) (emphasis added).

Great West argues that the 90-day deadline began to run in January 2025 when it received a written demand for Policy Limits from Lawrencia Ferguson. ECF No. [46] at 15. According to Great West, given that T.F.'s Estate made an earlier demand for Policy Limits, Ms. Ferguson's demand in January 2025 was the first time that Great West received notice of competing claims in excess of the available policy limits. *Id*. at 10–11, 15. If Ms. Ferguson's January 2025 demand triggered the 90-day deadline, this action complies with Section 624.155(6) as Great West filed suit in February 2025.

14

Interpleader Defendants argue that the 90-day deadline began to run, at the latest, in September 2024.[5]  ECF Nos. [38] at 4, [39] at 4, [58] at 6. According to Interpleader Defendants, Great West "communicated its own acknowledgment of excess exposure" in its September 2024 Letter. ECF No. [39] at 4; *see also* ECF No. [38] at 4.  As such, Interpleader Defendants contend that the September 2024 Letter establishes that Great West had received notice of competing claims that may exceed the available policy limits, which triggers the 90-day period set forth in Section 624.155(6).   Because Great West filed this action more than 90 days later, Interpleader Defendants argue that the September 2024 Letter "demonstrates that Great West's allegations of timely statutory compliance are untrue." ECF No. [58] at 6.  If the 90-day deadline is measured from the September 2024 Letter, Great West failed to comply with Section 624.155(6) because it did not file this action until more than five (5) months later.

---

[5] Lawrencia Ferguson also argues that the 90-day deadline should run from the date of the accident or the dates of the lawsuits that were filed by Sharon's Estate and T.F.'s Estate. ECF No. [38] at 4.  However, Ms. Ferguson offers no support for the proposition that the accident itself is equivalent to "competing claims" as referenced in Section 624.155(6).  While the lawsuits may well be "competing claims" within the meaning of Section 624.155(6) as they are clearly demands for the payment of money from Great West's insured and together may exceed the Policy Limits, the mere existence of those lawsuits does not trigger the 90-day deadline.   As Section 624.155(6) makes clear, the deadline is triggered when the insurer receives notice of competing claims, and there is no indication in the record when Great West received notice of those lawsuits.  Thus, on this record, the wrongful death lawsuits filed by Sharon's Estate and T.F.'s Estate cannot trigger the 90-day deadline set forth in Section 624.155(6).

B. The Court May Consider the September 2024 Letter Pursuant to the Incorporation by Reference Doctrine.

The Court addresses a threshold issue at the outset: can it consider the September 20024 Letter at this stage of the proceedings?  Great West argues that consideration is improper because the Complaint does not reference or attach the September 2024 Letter.  ECF No. [66] at 8–9.   It is well-established that "a court generally may not consider matters outside of the pleadings without treating the motion as a motion for summary judgment . . . ."  *Johnson v. City of Atlanta*, 107 F. 4th 1292, 1298 (11th Cir. 2024).  The Eleventh Circuit recently clarified the exception to this rule, holding that "when resolving a motion to dismiss or a motion for judgment on the pleadings, a court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged."  *Id*. at 1300.  As such, Great West's assertion that the Court cannot consider the September 2024 Letter because it is not directly referenced in or attached to the Complaint, ECF No. [66] at 9, is incorrect.

Great West next argues that the September 2024 is not central to its claims because "it is not necessary to establish any element of Great West's interpleader claim."  *Id.*  The Court does not agree.  It is true that "[a] document, by definition, is central a complaint when it is a necessary part of a plaintiff's effort to make out a claim."  *Ricigliano v. School Bd. of Seminole Cnty.*, No. 6:22-cv-2258, 2023 WL 12175887, at *3 (July 5, 2023) (quoting *Kalpakchian v. Bank of Am. Corp.*, 832 F. App'x 579, 583 (11th Cir. 2020)).  Yet "extrinsic evidence demonstrating that a claim

16

exceeds the statute of limitations and is thus time-barred is necessarily central or integral to the complaint and [thus,] may be considered without converting the motion to dismiss to one for summary judgment." *Ricigliano*, 2023 WL 12175887 at *3 (citation omitted); *see also, Walker v. Dep't of Veterans Affairs*, No. 1:16-cv-35, 2017 WL 2979700, at * 1, n.1 (M.D. Fla. June 9, 2017) ("The exhibits filed by Defendant are central to Plaintiff's claims because they directly relate to the prerequisites for and timeliness of her claims. Moreover, Plaintiff does not challenge their authenticity. Accordingly, the Court may consider these documents in ruling on the motion to dismiss."). Here, the September 2024 Letter is precisely the kind of document that is directly related to the prerequisites of filing the claim.

Indeed, Section 624.155(6) expressly states that its protections apply "*if*, within 90 days after receiving notice of the competing claims in excess of the available policy limits, the insurer complies with either paragraph (a) or paragraph (b): . . . ." Fla. Stat. § 624.155(6) (emphasis supplied). In its Complaint, Great West seeks the protections provided by Section 624.155(6). In particular, Great West asks the Court to enter an Order that, among other things,

> [p]rovid[es] that, pursuant to Section 624.155(6), Fla. Stat., all interested parties subject to this action be restrained and estopped from initiating any action against GREAT WEST CASUALTY COMPANY for recovery of the $1,000,000 of limits available under the Policy and the $1,000,000 of limits available under the Excess Policy *and any amounts in excess of such policy limits* which the trier of fact may find the competing third-party claimants are entitled to in this action.

ECF No. [1] at 5, ¶ f) (emphasis supplied). Given that Great West must establish that it filed its Complaint within the 90-day deadline set forth in Section 624.155(6)

in order to obtain the injunctive relief it seeks, and the September 2024 Letter relates to its compliance with that deadline, the Court concludes that the September 2024 Letter is central to Great West's claims.

Having concluded that the first prong of the incorporation by reference doctrine is satisfied, the Court turns to the second prong, which requires that the document be "undisputed, meaning that its authenticity is not challenged." *Johnson*, 107 F. 4th at 1300. In its Response, Great West does not dispute that the September 2024 Letter is authentic. *See* ECF No. [66] at 8–9. Indeed, Great West extensively discusses the September 2024 Letter in its Responses, yet at no point does Great West call the authenticity of the document into question. *See* ECF Nos. [46] at 14–15, 19–20; [47] at 14–15, 19–20; [66] at 14–15, 18–20. Therefore, the Court concludes that the second prong of the incorporation by reference doctrine is satisfied because the authenticity of the September 2024 Letter is not challenged. Accordingly, pursuant to the incorporation by reference doctrine, the Court may consider the September 2024 Letter. *See Johnson*, 107 F. 4th at 1300; *Ricigliano*, 2023 WL 12175887 at *3; *Walker*, 2017 WL 2979700 at * 1, n.1.

The Court now turns to the merits of the parties' arguments as to whether the September 2024 Letter triggers the 90-day deadline set forth in Section 624.155(6).

### C. The 90-Day Period in Section 624.155(6) Begins to Run When an Insurer Receives Notice of Competing Claims Which in Total May Be in Excess of the Available Policy Limits.

Great West argues that the September 2024 Letter cannot trigger the 90-day deadline because it merely warns of *potential* excess exposure and Great West's investigation revealed that Sharon Ferguson was at fault, thereby relieving its

insureds of liability.  ECF Nos. [46] at 15–17, [47] at 15–19, [66] at 15–18.  This argument is premised on the assumption that the 90-day deadline is only triggered when the insurer receives notice of competing claims that clearly or likely are in excess of the available policy limits.  Section 624.155(6) does not support such a reading and, if accepted, would violate established principles of statutory construction.

"When interpreting a statute, we follow the supremacy-of-text principle—namely, the principle that the words of a governing text are of paramount concern, and what they convey, in their context, is what the text means."  *Mercury Indem. Co. of Am. v. Central Florida Med. & Chiropractic Ctr., Inc.*, 380 So. 3d 477, 479 (Fla. 5th DCA 2023) (quotation marks and citation omitted).  Section 624.155(6) starts by referring to competing claims that "may" exceed the available policy limits.  Specifically, the first phrase of the statute reads: "[i]f two or more third-party claimants have *competing claims* arising out of a single occurrence, which in total *may exceed* the available policy limits of one or more of the insured parties who may be liable to the third-party claimants . . . ."  Fla. Stat. § 624.155(6) (emphasis supplied).  The legislature did not use the words "will exceed" or even simply "exceed" in this phrase.  It used the words "may exceed."

It is well-established that "[i]n statutory construction, statutes must be given their plain and obvious meaning and it must be assumed that the legislative body knew the plain and ordinary meanings of the words."  *Rinker Materials Corp. v. City of N. Miami*, 286 So.2d 552, 553 (Fla. 1973).  Further, in interpreting a statute, courts

19

presume "that the legislature says . . . what it means and means . . . what it says." *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 89 (2017) (quoting *Dodd v. United States*, 545 U.S. 353, 357 (2005)).

It is true that the word "may" is not set forth in the portion of Section 624.155(b) that mentions the 90-day deadline to file an interpleader action. That phrase states that the insurer must act "within 90 days after receiving notice of the competing claims *in excess* of the available policy limits." Fla. Stat. § 624.155(6) (emphasis supplied). Under Great West's interpretation, the only notice that triggers the 90-day deadline is notice of competing claims that are clearly or likely in excess of the available policy limits. However, the structure of Section 624.155(6) and the rules of grammar demonstrate that the 90-day deadline is triggered by notice of competing claims that *may* be in excess of the available policy limits. Indeed, to find otherwise would render the earlier language superfluous, a reading that cannot be sustained. *See Fuerst v. Housing Auth. of City of Atlanta, Ga.*, 38 F. 4th 860, 869 (11th Cir. 2022) ("[T]he surplusage canon obliges us, whenever possible, to disfavor an interpretation when that interpretation would render a clause, sentence, or word . . . superfluous, void, or insignificant.") (quotation marks and citations omitted); *United States v. Velez*, 586 F.3d 875, 877 (11th Cir. 2009) (courts "must not read 'any provision, or even any word, of a statute so as to make it superfluous.'") (citations omitted).

As mentioned, Section 624.155(6) states:

> If two or more third-party claimants have competing claims arising out of a single occurrence, which in total may exceed the

20

available policy limits of one or more of the insured parties who
may be liable to the third-party claimants, an insurer is not liable
beyond the available policy limits for failure to pay all or any
portion of the available policy limits to one or more of the third-
party claimants if, within 90 days after receiving notice of the
competing claims in excess of the available policy limits, the
insurer complies with either paragraph (a) or paragraph (b):

Fla. Stat. § 624.155(6). The phrase containing the 90-day deadline refers to notice of
"*the* competing claims in excess of the available policy limits . . . ." *Id.* (emphasis
supplied). "Because '[w]ords are to be given the meaning that proper grammar and
usage would assign them,' the 'rules of grammar govern' statutory interpretation
'unless they contradict legislative intent or purpose.'" *Nielsen v. Preap*, 586 U.S. 392,
408 (2019) (quoting A. Scalia & B. Garner, Reading Law: The Interpretation of Legal
Texts 140 (2012)). Courts routinely recognize that "grammar and usage establish
that 'the' is 'a function word . . . indicating that a following noun or noun equivalent
is definite or has been previously specified by context.'" *Id.* at 408 (citations omitted);
*see also, United States v. Gyetvay*, 149 F. 4th 1213, 1227 (11th Cir. 2025) (same). As
such, use of the definite article "the" when referring to "competing claims" in the
phrase containing the 90-day deadline demonstrates that it is limited to "competing
claims" referenced earlier in the statute, namely competing claims "which in total
*may* exceed the available policy limits." Fla. Stat. § 624.155(6) (emphasis added).

Courts consider "all the textual and structural clues that bear on the meaning
of a disputed text" when interpreting a statute, *Conage v. United States*, 346 So. 3d
594, 598 (Fla. 2022) (quotation marks omitted), and "presume the legislature
understands the meaning of the language it uses and the implications of its
placement in a statute." *Ward v. State of Florida*, 936 So. 2d 1143, 1146 (Fla. 3d DCA

2006) (citation omitted); *see also, Mercury Indem. Co. of Am. v. Central Florida Med. & Chiropractic Ctr., Inc.*, 380 So. 3d 477, 479 (Fla. 5th DCA 2023) ("The legislature is presumed to know the meaning of words and the rules of grammar, and the only way the court is advised of what the legislature intends is by giving the generally accepted construction, not only to the phraseology of an act but to the manner in which it is punctuated.") (quoting *Fla. State Racing Comm'n v. Bourquardez*, 42 So. 2d 87, 88 (Fla. 1949)).  Because Section 624.155(6) first refers to "competing claims . . . which in total may exceed the available policy limits . . .," the later reference to "notice of the competing claims in excess of the available policy limits" must mean that the notice required to trigger the 90-day deadline is notice of competing claims that *may* be in excess of the available policy limits.

Accordingly, for the foregoing reasons, the Court concludes that the 90-day deadline set forth in Section 624.155(6) begins to run when an insurer receives notice of competing claims which in total may be in excess of the available policy limits.  In short, the "competing claims" of which an insurer must receive notice to trigger the 90-day deadline are those which together *may* exceed the available policy limits of the insured.

### D. The September 2024 Letter Triggered the 90-Day Deadline Set Forth in Section 624.155(6).

The September 2024 Letter states in relevant part as follows:

> The purpose of this letter is to advise you that based on our investigation to date, it has become evident that the potential for an excess exposure does exist in this matter and the coverage provided by Great West Casualty Company ("Great West") may be insufficient for the claims that are being pursued in this matter.  The damages resulting from this loss may have a value

22

> in excess of the policy limits of insurance provided to you by Great West.  Based upon the potential damages and exposure presented by this loss, this shall serve as notice to you of an excess exposure.  As your insurer, we have a duty to advise you of settlement opportunities, to advise you as to the probable outcome of the matter and/or litigation, and to warn you of the possibility of an excess judgment and any steps you might take to avoid the same.

ECF No. [39] at 10.  The plain language of the September 2024 Letter reflects that by this date, Great West had notice of competing claims that may exceed the Policy Limits.  It is, in fact, what the Letter says.  In particular, the September 2024 Letter expressly refers to "claims that are being pursued in this matter." *Id*.  Further, the September 2024 Letter identifies the "Claimant(s)" as "Legacy A. Ballista-Ferguson, [T.F.], Lawrencia Suekeena Ferguson, Santana A. Ballista, and Sharon Hortence Ferguson." *Id*.  The use of "claims" in plural form and the identification of multiple claimants demonstrates that Great West had received notice of "competing" "claims." Great West's argument that "[n]o ostensive claim was made before November 14, 2024," ECF Nos. [46] at 10, [47] at 11, [66] at 12, is not well-taken given that its September 2024 Letter explicitly uses the term "claims."

In addition, the September 2024 Letter expressly recognizes that "the potential for an excess exposure does exist in this matter and the coverage provided . . . may be insufficient for the claims that are being pursued in this matter."  ECF No. [39] at 10.  Indeed, the September 2024 Letter repeatedly warns that the claims may exceed the available Policy Limits, stating "[t]he damages resulting from this loss may have a value in excess of the policy limits of insurance provided to you by Great West[;]" "[b]ased upon the potential damages and exposure presented by this loss, this shall serve as notice to you of an excess exposure[;]" and "[a]s your insurer, we have a duty

to . . . warn you of the possibility of an excess judgment . . . ." *Id*.  For the reasons explained *supra*, this language demonstrates that the claims referenced in the September 2024 Letter are "competing claims" within the meaning of Section 624.155(6) because together they may exceed the Policy Limits.  As such, the September 2024 Letter triggers the 90-day deadline set forth in Section 624.155(6) because it reflects that Great West had received notice of competing claims which in total may be in excess of the available policy limits.

Great West's arguments to the contrary are not persuasive.  Great West asserts that the September 2024 Letter cannot trigger the 90-day deadline because "insurers are entitled to a reasonable time to investigate claims and assess exposure before making settlement decisions."  ECF Nos. [46] at 12, [47] at 12, [66] at 14.  However, the September 2024 Letter confirms that Great West had sufficient time to—and did—conduct an investigation that enabled it to determine that "the claims that are being pursued in this matter" may exceed the Policy Limits.  *See* ECF No. [39] at 10 ("The purpose of this letter is to advise you that *based on our investigation to date*, it has *become evident that the potential for an excess exposure does exist in this matter* and the coverage provided by [Great West] may be insufficient for the claims that are being pursued in this matter.") (emphasis supplied).  Further, on this record, the September 2024 Letter merely started the 90-day clock, so Great West had an additional three (3) months to continue its investigation and decide whether to file an interpleader action pursuant to Section 624.155(6).  Moreover, Great West's

24

contention in this regard seemingly introduced a policy argument that is not persuasive in light of the statute's clear language.

Great West also argues that the September 2024 Letter cannot trigger the 90-day deadline because Sharon Ferguson allegedly caused the accident and, "[un]der Florida's modified comparative fault statute, a claimant more than 50% at fault recovers nothing."  ECF Nos. [47] at 16, [66] at 16; *see also*, ECF No. [46] at 19. Putting aside whether Sharon Ferguson caused the accident as Great West now argues, this argument does not undermine the Court's conclusion because even if Sharon's Estate is not considered a claimant, the September 2024 Letter identifies several claimants.  ECF No. [39] at 10.  As such, Great West had notice of competing claims that may exceed the Policy Limits irrespective of whether Sharon's Estate could recover.  Moreover, whether Sharon's Estate (or any of the other claimants) would ultimately succeed on their claim is not relevant because, as the Court explained *supra*, the 90-day deadline begins to run when an insurer receives notice of competing claims which in total *may* be in excess of the available policy limits.

For this reason, Great West's argument that the September 2024 Letter is insufficient because "no . . . demand with supporting evidence was ever received prior to the filing of this interpleader," ECF Nos. [46] at 13, [47] at 13, is not correct. Notably, Great West relies on a different provision of Section 624.155, specifically Section 624.155*(4)(a)*, which protects an insurer from a subsequent bad faith action if it timely tenders the lesser of the policy limits or the amount demanded by the claimant.  *See* Fla. Stat. § 624.155(4)(a).  Section 624.155(4)(a) expressly states that

the 90-day period set forth therein begins to run when the insurer receives "actual notice of a claim which is accompanied by sufficient evidence to support the amount of the claim." *Id.* ("An action for bad faith involving a liability insurance claim, including any such action brought under the common law, shall not lie if the insurer tenders the lesser of the policy limits or the amount demanded by the claimant within 90 days after receiving actual notice of a claim which is accompanied by sufficient evidence to support the amount of the claim."). By contrast, the provision at issue here, Section 624.155*(6)*, which protects an insurer from a later bad faith lawsuit if it timely files an interpleader action, contains no such language when referencing its own 90-day deadline.

Lastly, Great West argues that the September 2024 Letter is a privileged communication drafted in furtherance of its good faith duty to advise its insured of potential exposure and, as such, cannot be used to trigger the 90-day deadline set forth in Section 624.155(6). ECF Nos. [46] at 14–15, 19–20; [47] at 14–15, 19–20; [66] at 14–15, 18–20. Great West contends that use of the September 2024 Letter is improper because it was drafted to fulfill its duty of good faith which "requires insures to advise insureds of potential exposure, but does not require blind/immediate acceptance of liability." ECF Nos. [46] at 15, [47] at 15, [66] at 15. The issue at hand, however, is not why the insurer drafted the letter; the issue is notice. And here, the September 2024 Letter clearly demonstrates that Great West was on notice, at least as of the date of the Letter. The Court agrees that an insurer is not required to blindly or immediately accept liability, but the Court's conclusion that the September 2024

Letter triggers the 90-day deadline does no such thing.  As mentioned, Great West conducted an investigation before issuing the September 2024 Letter and had an additional 90 days thereafter to further investigate before deciding whether to file an interpleader action.  Such circumstances do not result in either blind or immediate payment.

Further, Great West is not barred from filing an interpleader action if waits longer than the 90-day period set forth in Section 624.155(6).  The 90-day period only applies if the insurer seeks to rely on the statute's safe harbor from future bad faith lawsuits.  *See* Fla. Stat. § 624.155(6).  Thus, an insurer can file an interpleader action at whatever point it decides that interpleader is warranted irrespective of the 90-day deadline set forth in Section 624.155(6).  Given that Great West retained the right to file an interpleader action even if it did not comply with the 90-day deadline set forth in Section 624.155(6), reliance on the September 2024 Letter does not require Great West to blindly or immediately accept liability.

Great West's other contention, that use of the September 2024 Letter is improper because it is a privileged communication between an insurer and its insured, is likewise unpersuasive.  As an initial matter, Great West has not demonstrated that the September 2024 Letter is indeed privileged. Even if it is privileged, Lawrencia Ferguson argues that Great West "waived any such protection when it was shared with counsel in the underlying wrongful death case." ECF No. [51] at 10.  Moreover, in its Complaint, Great West invoked the safe harbor protections of Section 624.155(6). ECF No. [1] at ¶ 23 f).  Those protections are only

available if Great West timely filed this action within the 90-day period set forth in the statute.  *See* Fla. Stat. § 624.155(6).  As such, the Court agrees with Ms. Ferguson that Great West "cannot simultaneously claim entitlement to safe harbor protections while asserting privilege over documents [such as the September 2024 Letter] directly relevant to whether it complied with the statut[ory] requirements for such protection."  ECF No. [51] at 10; *c.f. Mid-Continent Cas. Co. v. Basdeo*, No. 08-cv-61473, 2009 WL 10664198, at *10 (S.D. Fla. Sept. 15, 2008) ("Florida courts have held documents in claims files not to be discoverable in coverage disputes because they have found that the materials in such files is essentially irrelevant to the coverage issue, that any relevance of the material is outweighed by its prejudicial nature, and that sometimes it is privileged. Here, none of these reasons prevent disclosure.").  For these reasons and on this record, the Court finds that reliance on the September 2024 Letter is not improper on the grounds of privilege.

E.   Great West Failed to Comply with Section 624.155(6) Because it Did Not Timely File This Action.

Great West filed this action on February 12, 2025.  ECF No. [1].  As explained above, the September 2024 Letter triggered the 90-day deadline set forth in Section 624.155(6).  Therefore, Great West was required to file this interpleader action by December 2024 in order to obtain the safe harbor provided in the statute.  It did not do so and, thus, it cannot rely on Section 624.155(6) as a basis to bring this interpleader action or obtain the injunctive relief it seeks in its Complaint.  Although Great West alleges that it received notice of competing claims "[o]n or about November 14, 2024," ECF No. ¶ 17, the Court is not required to accept this allegation

28

as true because it is contradicted by the September 2024 Letter.  *See CC-Aventura, Inc. v. Weitz Co., LLC*, No. 06-cv-21598, 2006 WL 3499113, at * 3 (S.D. Fla. Dec. 4, 2006) ("While normally on a motion to dismiss the Court must accept the facts alleged in a complaint as true, if an allegation in the complaint is contradicted by a document incorporated by reference therein and which reveals facts foreclosing recovery as a matter of law, dismissal is appropriate.").

Given that the Complaint expressly states that Great West has brought this interpleader action pursuant to, among other grounds, Section 624.155(6), ECF No. [1] ¶ 10, and the statute is inapplicable because Great West did not comply with the 90-day filing deadline set forth therein, the Court finds that dismissal without prejudice is warranted.  If Great West wishes to pursue its interpleader action in this Court, it may file an amended complaint that specifies a basis other than Section 624.155(6) for the relief sought.

## III.     CONCLUSION

For the reasons explained above, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Interpleader Defendant Lawrencia Ferguson's Motion to Strike Requests for Discharge and Injunctive Relief, ECF No. [38], is **GRANTED**.

2. Interpleader Defendant Rodrick Rolle's Motion to Dismiss All Claims for Relief Pursuant to Section 624.155(6)(a), Florida Statutes, ECF No. [39], is **GRANTED,** although dismissal is **WITHOUT PREJUDICE**.

3.  Interpleader Defendant Nilda Meralla, as Personal Representative of the Estate of T.F.'s, Motion to Dismiss, ECF No. [58], is **GRANTED,** although dismissal is **WITHOUT PREJUDICE**.

4.  The rulings set forth above apply to Interpleader Defendant Mamo Transportation Inc.'s Notice of Joinder With Co-Defendants' Motions to Dismiss.  ECF No. [78].

5.  The Complaint, ECF No. [1], is **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**.

6.  If Plaintiff intends to pursue an interpleader action in this Court, it must file an amended complaint that specifies a basis other than Florida Statutes § 624.155(6) for the relief sought **no later than February 20, 2026**.  Failure to comply with this deadline will result in the dismissal of this action without further notice.

**DONE AND ORDERED** in Miami, Florida, this 6th day of February, 2026.

_____
**JACQUELINE BECERRA**
**UNITED STATES DISTRICT JUDGE**